Argued April 19, writ of *mandamus* allowed April 25, 1916.

## McCAMANT v. OLCOTT.

(156 Pac. 1034.)

**Elections—Presidential Primary Law—Ballots—"Candidate."**
1.   Under the presidential primary law (Laws 1915, p. 348), providing that the name of any "candidate" for a party nomination for President shall be printed on the party nominating ballot "upon the written request of such candidate" or "upon the petition of one thousand of his supporters," the name of one so petitioned for is required to be placed upon the ballot even contrary to his wishes; the word "candidate" not being construed to mean one who seeks or runs for office.

Original proceeding in Supreme Court.

This is a proceeding by *mandamus* by Wallace McCamant against Ben W. Olcott, as Secretary of State. The facts are set forth in the opinion of the court.

WRIT ALLOWED.

*Mr. Wallace McCamant* and *Mr. Albert Abraham,* for the petitioner.

*Mr. Isaac H. Van Winkle,* Assistant Attorney General, and *Mr. Charles W. Fulton,* for the defendant.

In Banc.    Mr. Justice McBride delivered the opinion of the court.

This is a proceeding by *mandamus* to require the Secretary of State to place upon the primary nominating ballot the name of Justice Charles E. Hughes as a candidate for the Republican nomination for President of the United States, regardless of his wishes in the premises.   It is conceded, and the pleadings show, that a petition signed by more than the requisite number of voters has been filed in the office of the Secretary of State requesting that the name of Justice Hughes be placed upon the ballot, and that Justice Hughes has peremptorily and decisively requested the Secretary of State not so to place his name, and has stated in his communication to that officer that he is not a candidate for such office.   But one question, therefore, is presented, namely, whether in view of such a refusal from the recipient of the proposed honor the Secretary of State is required by our election laws to place the name of the person so proposed upon the ballot.

A discussion of this question would seem to require a review of the history of the law regarding the nomination of candidates.   The first legislation on this subject is found in Section 36, Laws of 1891, page 20, being Section 3338, L. O. L., and required that the person nominated must accept the nomination in one of several ways therein specified, and further provided that the nomination should not be deemed complete until the acceptance was filed.   In 1904 the direct primary law was passed, and it was therein provided that before any person could become a candidate for nomination by petition he should file with the Secretary of State, or other officer as the case might be, a copy of his petition signed by himself, which petition should be conclusive evidence of his candidacy for the nomina-

tion. In November, 1910, the presidential primary law was adopted by the initiative: Laws of 1911, p. 19. This made a radical change in the manner of expressing the popular preference for candidates to be nominated for President and Vice-president, and, in fact, is the first act providing for the expression of such preference, and by express terms did away with all previous statutes requiring any petition or acceptance signed by the candidate. Subdivision "b" of Section 2 of said act is as follows; those portions deemed material to this controversy being here italicized:

"When candidates for the offices of President and Vice-president of the United States are to be nominated, *every qualified elector of a political party subject to this law shall have opportunity to vote his preference, on his party nominating ballot, for his choice for one person to be the candidate of his political party for President, and one person to be the candidate of his political party for Vice-president of the United States,* either by writing the names of such persons in blank spaces to be left on said ballot for that purpose, or by marking with a cross before the printed names of the persons of his choice, as in the case of other nominations. *The names of any persons shall be so printed on said ballots solely on the petition of their political supporters in Oregon, without such persons themselves signing any petition, signature or acceptance.* The names of persons in such political party who shall be presented by petition of their supporters for nomination to be party candidates for the office of President or Vice-president of the United States, shall be printed on the nominating official ballot, and the ballots shall be marked, and the votes shall be counted, canvassed and returned in like manner and under the same conditions as to names, petitions and other matters, as far as the same are applicable, as the names and petitions of aspirants for the party nominations for the office of Governor and for United States Senator in Congress are or may be by law re-

quired to be marked, filed, counted, canvassed and returned.''

It will be seen that the vote thus taken did not, and could not, amount to a nomination, but merely to the expression of a preference by a majority of the voters, which by subdivision ''d'' of the act last cited was made at least morally binding upon the party delegates elected to the national nominating convention by the following provision:

''Every such delegate to a national convention to nominate candidates for President and Vice-president shall subscribe an oath of office that he will uphold the Constitution and laws of the United States and of the State of Oregon, and that he will, as such officer and delegate, to the best of his judgment and ability, faithfully carry out the wishes of his political party as expressed by its voters at the time of his election.''

It is plain that under the provisions of this act the persons for whom the voters were permitted to express a preference had no right to be consulted upon the question as to whether or not they should be voted for or as to whether or not their names should go upon the ballot; the idea of the people in enacting it seeming to be that the ''office should seek the man,'' rather than that the man should seek the office by petition, request or acceptance, as provided in the original direct primary law. In 1915 the initiative act above cited was revised and amended in many particulars: Laws 1915, p. 348. Section 1 of this act provides:

''In the years when a President and a Vice-president of the United States are to be nominated and elected, the several political parties recognized by Chapter 108 of the General Laws of Oregon for 1913, shall elect delegates to their national conventions and nominate their candidates for presidential electors, and may express their choice for candidates for the nominations

for President and for Vice-president of the United States in the manner hereinafter provided."

Section 7 is as follows:

"When candidates for the offices of President and Vice-president of the United States are to be nominated, every qualified elector of a political party subject to this law shall have opportunity to vote his or her preference, on his or her party nominating ballot, for his or her choice for one person to be the candidate for nomination by his or her political party for the office of President, and one person for Vice-president of the United States, either by writing the names of such persons in blank spaces to be left on said ballot for that purpose, or by marking with a cross before the printed names of the persons of his or her choice, as in the case of nominations of candidates for state and district offices. The name of any candidate for a party nomination for President or for Vice-president of the United States shall be printed on said ballots upon the written request of such candidate filed with the Secretary of State within the time provided for the filing of petitions of candidates for nomination for state and district offices, or upon the petition of one thousand of his supporters who are registered voters in the State of Oregon of the political party to which said candidate belongs. The names of such candidates for party nominations for President and for Vice-president of the United States shall be printed on the official ballots for the primary nominating elections of their respective political parties, and shall be marked, counted, canvassed, returned and proclaimed in the same manner and under the same conditions, as far as the same are applicable, as the names of candidates for nomination for state and district offices."

This section, it will be observed, follows the same general trend as subdivision "b" of the act of 1911, except that the words "such candidates" appear where in the original act the words "the names of such persons in such political party," etc., are used, and in-

stead of the words "solely upon the petition of their political supporters in Oregon without such persons themselves signing any petition, signature, or acceptance" there appear the words "upon the written request of such candidate filed * * or upon the petition of one thousand of his supporters who are registered voters of the State of Oregon," etc. The purpose of the amendment of 1915, so far as it applies to the subject under discussion, is plain, and is this: Under the initiative act of 1910 the sole method by which a person actually seeking the indorsement of the voters for the nomination for President could have his name printed upon the official primary ballot was by means of a petition signed by 1,000 voters. The amendment provided another means, namely, by the candidate filing a written request. The later statute, therefore, has provided alternative methods whereby the name of the proposed candidate can be made so as to appear: First, by reason of a written request made by him and filed with the Secretary of State; or, second, by means of a petition signed by the prescribed number of voters. The method provided by the initiative act of 1910, so far as it relates to this matter, is complete in itself. In express language it does away with, and therefore repeals, that part of the direct primary law which requires the acceptance by the candidate of the nomination, if, indeed, it can be called a nomination, for the office of President. As to that office it is a dead letter requiring subsequent express legislation to make it applicable, and no such legislation has been had.

It is suggested, however, that the provision in the act of 1915 requiring that the "names of such candidates for party nominations for President and Vice-president" shall be printed on the official ballot in itself precludes the idea that the name of a person can

be printed upon the official ballot without his consent, or, as in this instance, contrary to his express wishes; it being argued that no person can be made a candidate against his wishes. This contention is neither borne out by the commonly accepted definition of the word "candidate," by the authorities, or by any fair construction of the act now under discussion. Webster defines a candidate to be:

"(1) One who offers himself or is put forward by others, as a suitable person, or an aspirant or contestant for an office, privilege, or honor; (2) a person considered worthy or likely to attain some dignity, or come to some place or end."

The definitions given by other lexicons, including the law dictionaries, are similar to that quoted.

"Candidate. One who seeks or aspires to some office or privilege, or who offers himself for the same; a person offering himself to the suffrage of the electors; one put forward for election, whether with or against his own will": 6 Cyc. 345; *Regina ex rel. Coyne* v. *Chisholm*, 5 Ont. Prac. 328.

Statutes of the character here indicated are new and rare in this country, and refusals on the part of our statesmen to run for office are so seldom met with that there is a dearth of adjudication bearing directly upon the matter here in issue, but the intent of the law is clearly indicated by the language of Section 7 above quoted:

"Every qualified elector of a political party subject to this law shall have opportunity to vote his or her preference on his or her party nominating ballot for his or her choice for one person to be the candidate for nomination by his or her political party for the office of President."

The object aimed at is the ascertainment of the sense of the electorate of the particular party as to the

proper person to be nominated by the national con-
vention of such party, to the end that the delegates
elected to represent their party in that body may be
advised as to the wishes of their constituents.     The
person thus designated as the voters' choice may or
may not be a candidate in the sense of seeking or even
desiring the nomination.     Primarily the object of the
law is, not to serve the convenience of parties seeking
a presidential nomination, but to enable the voters to
express their preference.     It would, of course, be im-
possible to print upon the ballot the name of every
person who might possibly be conspicuous enough to
receive one or a few votes, but the legislature wisely
determined that, whenever any person developed such
strength that 1,000 voters should see fit to ask that his
name should be printed upon the ballot, this fact con-
stituted a sufficient showing that the convenience of the
public would be promoted by printing the name of such
person upon the primary ballot.     The person whose
name is thus placed upon the ballot is not a candidate
in the sense of seeking or running for the office.     The
preferential vote cast in his favor does not nominate
him for President, but is merely advisory to and mor-
ally obligatory upon the delegates chosen to rep-
resent the party in the national convention, and the
words "such candidate," used in the latter part of
Section 7, *supra,* must, in view of the context, be inter-
preted to mean the person in whose favor a petition
containing 1,000 names is filed.     In this very restricted
sense, and in no other, can he be deemed a candidate.
Nobody will question the proposition that, if no peti-
tion had been filed, and the name of Justice Hughes
had been written upon the ballot by a majority of the
Republican voters of the state, the result would have
been a perfectly legal expression of the will of the

Republican electorate as to their first choice for President, even in face of the fact that he had previously stated he did not desire his name so written and was not a candidate for President. Printing his name upon the ballot merely enables his supporters *to do conveniently* and expeditiously what would otherwise cause inconvenience and delay at the polls, and is in line with the primary intent of the act, which is to enable every citizen to express his preference.

While we fully appreciate the embarrassment that the course indicated will occasion the eminent jurist, who is not seeking the indorsement the petitioners wish to tender him, and who, no doubt, wishes to avoid having the great honor and greater burden of the presidency laid upon his unwilling shoulders, it seems clear to us that the petitioners have the right, even contrary to his wishes, to express their preference for him as the most fitting citizen to be a candidate for President.

A judgment will therefore be entered in accordance with this opinion.

Mr. Chief Justice Moore and Mr. Justice Eakin took no part in the consideration of this case.