STATE OF NORTH DAKOTA EX REL. R. A. KINZER, Appellant, v. THOMAS HALL, as Secretary of State, Respondent.

(197 N. W. 770.)

**Elections — electors may vote preference for candidates of respective parties for President.**

1. Section 910 of the Compiled Laws of 1913 gives to the qualified electors

---

Note.—(3) Construction placed on laws by officer charged with enforcement thereof, see 25 R. C. L. 1043; 3 R. C. L. Supp. 1439; 4 R. C. L. Supp. 1617; 5 R. C. L. Supp. 1361.

of political parties an opportunity to vote their preference among those aspiring to be candidates of the respective parties for President of the United States.

**Elections — where not shown that person aspirant for nomination, name cannot be placed on ballot.**

2. Where a petition is filed on behalf of a supposed candidate who later requests the withholding of his name from the ballot, and where there is no proper showing that such person is an aspirant for the nomination of the party named in the petition, the officer whose duty it is to place the names on the ballot will not be compelled to include such name.

**Statutes — previous construction by officer acting under statute entitled to weight.**

3. A previous construction of the statute by the officer whose duty it is to act under it is entitled to some weight on a question of construction.

Opinion filed March 12, 1924.

Elections, 20 C. J. § 109 p. 111 n. 70; § 119 p. 118 n. 69 New. Statutes 36 Cyc. pp. 1140 n. 64; 1141 n. 70.

Appeal from the District Court of Morton County, *Pugh, J.*
Affirmed.

*Joseph Coghlan* and *F. O. Hellstrom,* for appellant.

*Geo. Shafer,* Attorney General, *Langer & Nuchols,* and *W. H. Stutsman,* Esq., for respondent.

PER CURIAM. This is an appeal from a judgment quashing an alternative writ of mandamus and dissolving a temporary restraining order which had previously issued out of the district court of Morton County. This alternative writ and restraining order had been issued ex parte and the writ was made returnable three days before the national delegate and presidential primary election. By them the secretary of state was restrained from circulating ballots unless they contained the name of Robert M. LaFollette as an aspirant for the Republican nomination for President. Hence, in effect, the merits of the proceeding brought to compel the insertion of that name on the ballot was adjudged in advance of the hearing. Upon appeal in the same proceeding, this court had previously reversed a judgment to like effect and remanded the cause for an expeditious hearing. State ex rel. Kinzer v. Hall, ante, 693, 197 N. W. 769. After the issuance of this alterna-

tive writ and restraining order, this court, upon the application of the attorney general for a supervisory writ, directed the district court of Morton county to proceed with an immediate hearing on the merits and directed the presiding judge, Honorable F. T. Lembke, before whom the prior proceedings had been had, to hear the same or to direct the Honorable Thomas H. Pugh, another judge of said district, to proceed with such hearing, and, to expedite the immediate hearing, this court likewise issued an order to show cause requiring the defendant to appear at a later hour on the same day and show cause why the relator was not entitled to the relief sought. Thereupon a hearing on the merits was had before the Honorable Thomas H. Pugh, at the conclusion of which findings of fact and conclusions of law were made. In pursuance of the findings and conclusions, the writ was quashed and the restraining order set aside. This appeal is from the judgment so entered.

The facts as they appear in the petitioner's amended petition and affidavits submitted may be briefly stated as follows: More than three thousand citizens and electors had filed with the Secretary of State a petition requesting the printing of the name of Robert M. LaFollette upon the official primary election ballot, as a Republican candidate for the office of President of the United States, to be voted by the electors at the presidential preference primary election to be held on the 18th day of March. Robert M. LaFollette is legally qualified to become a candidate for the said office, and it is alleged that he is an aspirant for the office, having made known such aspiration by word of mouth or by written, printed and published statements, and that the petitioners and electors signing the petition and causing the same to be filed had thus learned of his aspiration for the presidency. Upon the hearing in district court, the petitioner introduced a letter written by the Honorable J. H. Sinclair, a member of Congress from the Third North Dakota District, and addressed to the relator herein, dated February 21, 1924. He states the attitude of Senator LaFollette as follows:

"I also showed your letter to Senator LaFollette. The Senator feels very kindly toward the friends in North Dakota, who are working for him, but has no illusions about his chances of being nominated for the Presidency at the Cleveland Convention. He is intensely inter-

ested in having North Dakota send a Progressive delegation to that convention. He wants to have a Progressive platform presented to the convention and this will be done by the Wisconsin delegation but under the rules it can only be considered if seconded by some other state. North Dakota should be that state. In order to insure the success of the Progressive ticket, it is my personal opinion that La-Follette's name will bring thousands of votes."

This letter and the allegations and statements of fact referred to above, and which were embodied in a supporting affidavit, constitute the proof offered on behalf of the petitioner. The respondent's return alleges that ballots were in process of being printed, containing the names of all the candidates filed for party nomination for the office of President of the United States, except that of Robert M. LaFollette. It admits the filing of the petition for the placing of the name of the latter upon the ballot. It alleges that on the 28th day of February, 1924 the respondent, the Secretary of State, received a telegram as follows:

Washington, D. C.

Thomas Hall, Secretary of State
    Bismarck, North Dakota.

You are authorized and directed to withhold my name as presidential candidate at the approaching primary election March 18th.

(Signed) Robert M. LaFollette.

and that this telegram was verified and confirmed by a later telegram, as follows:

Washington, D. C.

Thomas Hall, Secretary of State
    Bismarck, North Dakota.

Your telegram asking verification by telegram this date withdrawing my name as presidential candidate is received. That telegram was genuine.

(Signed) Robert LaFollette.

It is alleged that there had not been presented or exhibited to the respondent any other evidence showing an intent or purpose on the part of the said Robert M. LaFollette to aspire to be a candidate of the Republican party for the office of President of the United States

at the presidential primary in this state, and that because of these telegrams and another telegram to be presently referred to the respondent had withheld his name. The other telegram was directed to one Gerald P. Nye, who was acting as a member of a political committee known as "LaFollette's Campaign Committee," and it was signed by Hon. J. H. Sinclair. It informed Nye that LaFollette had stated, in effect, that he was not a candidate for the nomination on the Republican ticket for the office of President of the United States in the presidential primary to be held March 18th and that he did not authorize the filing of his name as such candidate. The contents of such telegram was brought to the notice of the respondent by one H. N. Tucker, who filed an affidavit as to its contents. A letter from Senator LaFollette, directed to H. N. Tucker, was likewise introduced, in which the following appears: "I did not ask to have my name placed on the ballot, and I have now withdrawn from the North Dakota Republican primary for the same reasons that have controlled me in refusing to be a candidate in the primaries of other states." In addition, he stated his unwillingness to permit his name to stand in a campaign in which he could not personally participate in placing the issues before the people; that he regarded it his duty to remain at his post in the Senate of the United States during the campaign, where, in his opinion, he could best serve the people; and he further stated that he had "no illusions about the Cleveland Convention" and that "the steam roller will be operated there by the same forces that controlled it in 1912 and other years." He expressed the further desire to have North Dakota send "tried and true progressives as delegates" to support a progressive delegation from Wisconsin in the convention. The findings of the district court are that the facts, as alleged in the return, are true, and that there was no competent or sufficient evidence presented to the court in support of the allegation that the said LaFollette "is now aspiring to become a candidate of the Republican party for President of the United States."

The placing of names upon the presidential primary election ballot is governed by § 910 of the Compiled Laws for 1913, which is as follows:

"In the presidential election years, the qualified electors of the political parties subject to this law shall have opportunity to vote for

their preference, on ballots provided for that purpose, for their choice among those aspiring to be candidates of their respective parties for president and vice-president of the United States, shall have their party delegates to their national conventions, their presidential electors, and shall nominate and recommend their choice for national committeemen. The names of the aspirants in each such party for election for the office of president, for office of vice-president of the United States, for national committeeman, for delegates to their national convention, and for presidential electors, shall be printed on the party nominating ballot, provided for that purpose, and the ballot shall be marked and the votes shall be counted; canvassed and returned· under the same conditions as to names, petitions and other matters so far as the same are applicable, as the names and petitions of party aspirants for the party nominations for the office of governor and of the United States senator in congress are, or may be by law required to be marked, filed, counted, canvassed, and returned; provided, that aspirants for such presidential nominations need not file any personal petition nor signature; that certificates of the number of votes received by each such candidate shall be issued to the delegates who are elected for said party to the party national convention; that petitions to place on the nomination ballot the names and aspirants for such office or delegate to said national convention, presidential elector and national committeeman to be chosen and elected, as provided herein, shall be sufficient if they contain a number equal to one per cent of the party vote in the state at the next preceding election for representative in congress, or not less than five hundred signatures of party voters. Every qualified voter shall have the right to vote for as many candidates for national delegates for his party and for the election of as many candidates for presidential electors as there are delegates and electors to be elected respectively, and each elector shall have a right to vote for one candidate of his party for national committeeman. A number of such candidates equal to the number of delegates to be elected and the number of presidential electors to be elected and the candidates for national committeeman, receiving, respectively, each for himself, the highest number of votes for such office or nomination, shall be declared elected."

The evident purpose of the statute touching the matter in controversy sufficiently appears from its language, wherein it states "the

qualified electors of the political parties subject to this law shall have opportunity to vote for their preference, on ballots provided for that purpose, for their choice among those aspiring to be candidates of their respective parties for president and vice-president of the United States.'' The candidates for national committeemen and delegates to the national conventions are required to file personal petitions or signatures, but those aspiring to the presidential nomination are excepted from this requirement. It is, nevertheless, evident that the opportunity to be accorded to the voters of a party to express a preference for presidential candidates is an opportunity to express a choice among those "aspiring to be candidates of their respective parties for president." Heretofore, this law has been construed by the secretary of state as authorizing him to withhold the name of one on whose behalf a petition has been filed where he directs that he be not entered as a candidate. Thus, in 1920, the name of W. J. Bryan was omitted from the ballot in this state, after a petition had been filed by the electors, pursuant to the following telegram:

Col. J. H. Bloom,
    Devils Lake, North Dakota.

Sorry to disappoint such loyal friends, but have refused to be a candidate in Nebraska. I hope the petition in your state can be withdrawn. If not please file a copy of this telegram with proper state officials and give to the press. If you desire to pledge delegates to Bryan democracy I have no objection, but I must not be entered as a candidate.

(Signed)    W. J. Bryan.

This construction by the officer required to certify the names for the ballot is entitled to weight, 2 Sutherland, Stat. Constr. § 474; 36 Cyc. 1140, especially since the legislature has not seen fit to amend the law in this respect. Without determining the degree of proof required to establish that one is an aspirant within the statute, and without determining whether or not the simple request by the supposed candidate that his name be omitted from the ballot may be taken as conclusive that he is not an aspirant, we are clearly of the opinion that the showing made in the court below would not support a finding that Robert M. LaFollette was an aspirant for the Republican nomination for Presi-

dent within the statute. It follows that the judgment below is right and must be affirmed. It is so ordered.

BRONSON, Ch. J., and BIRDZELL, JOHNSON, and NUESSLE, JJ., concur.

Mr. Justice CHRISTIANSON deeming himself disqualified, did not participate.