Submitted on briefs September 25, writ allowed October 2, 1928.

HARVEY G. STARKWEATHER v. HAL E. HOSS, SECRETARY OF STATE.

(270 Pac. 768.)

For plaintiff there was a brief over the names of *Mr. Johnston Wilson* and *Mr. Elton Watkins.*

For respondent there was a brief over the name of *Mr. I. H. Van Winkle,* Attorney General.

BEAN, J.—This is an original proceeding in *mandamus* to compel the Secretary of State to place the plaintiff's name on the official ballot for the general election occurring November 6, 1928. The cause is submitted to us upon the alternative writ and a demurrer on behalf of defendant in answer thereto.

The facts disclosed by the writ are not in dispute and are substantially as follows:

At the primary election, held May 18, 1928, James W. Mott, who had filed his declaration as a Republican candidate for representative in Congress from the First Congressional District of Oregon, and whose name was printed on the Republican ballot at such primary, received the largest number of votes for the nomination on the Democratic ticket by means of his name being written by the Democratic voters upon their ballots. Honorable W. C. Hawley received the nomination as a Republican candidate for that office at the primary election. There was no name printed on the official Democratic ballot for this office. Mr. Mott had pledged himself in his declaration of candidacy, in the event he failed to secure the Republican nomination, that he would not accept the nomination or indorsement of any other party. In accordance therewith, and with the provisions of Section 3988, Or. L., he was not tendered the nomination of the Democratic party and did not become the candidate for that party for such office.

Subsequently, the Democratic Congressional Committee for the First Congressional District met and nominated Harvey V. Starkweather, the plaintiff, of that district, as the Democratic candidate for Congress therefrom, and a certificate duly certified by the presiding officer and secretary of the committee, certifying Starkweather's nomination, was duly tendered to Sam A. Kozer, Secretary of State, who refused to file the same, alleging as his reason that no vacancy existed on the Democratic ticket; and the same was unauthorized by law.

Plaintiff submits that, since the candidate for the nomination for Congress from the First Oregon District in the Democratic primaries receiving the high-

est number of votes was ineligible to accept the nomination, the Democratic Congressional Central Committee of that district was authorized to fill the vacancy in the manner provided by law, under Section 3975, Or. L., as amended by Chapter 149, Or. L., 1925. This section, as amended, reads as follows:

"In case any candidate nominated under the provisions of this act shall die, withdraw, or for any reason be ineligible, or if there shall occur a vacancy by death, resignation or otherwise, in the office of United States senator or representative in congress, or in any elective state, district, county or precinct office, on or after the day set by law for holding primary nominating elections, or if such vacancy occur before such nominating election but within such a time that a candidate for such vacancy could not be nominated at such election, either the state, congressional or county central committee, as the case may be, of any political party, or the managing or executive committee thereof, may nominate a candidate for such vacancy upon the call of the chairman of such state, congressional or county committee, and the name of the person so nominated for such vacancy shall be certified to the proper officer by the chairman of such committee, attested by the secretary thereof, substantially in the manner provided by sections 3932 and 3933, Or. Laws; and in event such nomination is filed with the secretary of state he shall certify the same to the various county clerks in the manner prescribed in section 3933, Or. L."

Section 3998 reads in part as follows:

"Said state, county and city central committees shall have the power to fill any vacancies occurring among the candidates of their respective parties nominated for city, county or state officers or members of the legislature, by the primary nominating election."

It is conceded, as we understand, that J. W. Mott, who was a Republican candidate for the nomination for representative in Congress, from the First District and failed to receive a plurality of the votes cast for such nomination, could not, under the law accept the nomination made by the Democratic party, or any other party.

The question arises here whether, under these conditions, he was ineligible to have his name printed on the Democratic ballot so that under the provisions of Section 3975, Or. L., the Democratic Congressional Central Committee could nominate a candidate for such vacancy. It is not questioned that, in case a candidate nominated under the provisions of the act should die, or withdraw, the committee could make such nomination. Neither of these circumstances are present in this case, and we are directed to the further provision of the statute, that in case any candidate nominated under the provisions of the act shall for any reason be ineligible, such committee shall function.

It is submitted by the learned attorney general "that before the committee can nominate, there first must have been a candidate nominated under the provisions of the primary law; and second, he must have died, withdrawn, or for some reason be ineligible"; and, in effect, that there was no candidate nominated by the Democratic party for representative in Congress from this district at the primary election. It appears from the writ Mr. Mott received the highest vote cast by members of the Democratic party at the primary nominating election, but on account of the provisions of Section 3988, Or. L., "was ineligible to receive said nomination."

Formerly the statute conferred authority upon a political party committee to make nominations ''to fill all vacancies occurring among the candidates of their respective parties nominated for city or county offices by the primary nominating election, where such vacancies are caused by death or removal from the electoral district, but not otherwise. This provision is contained in Section 3389, L. O. L., enacted in 1905.

By Chapter 289, Laws of 1919, it is provided that in case any candidate nominated under the provisions of this act shall die, withdraw or for any reason be ineligible, the State Congressional or County Central Committee, as the case may be, of the political party of which such candidate was a member shall fill such vacancy.

■ ■ What, then, is the meaning of the provision of the statute authorizing a party committee to act when any candidate nominated shall for any reason be ineligible? We think the ineligibility here referred to pertains to the qualification of the person to have his name printed on the ballot at the succeeding election. It was the purpose of the Direct Primary Law to provide for the nomination of candidates whose names are to be so printed. In so far as the nomination made by the Democratic party of a candidate for Congress in the first district is concerned, there was a vacancy which the Congressional Central Committee was authorized by the statute to fill. This is the apparent purpose and intent of the legislative expression.

''The term 'vacancy' means an empty space, a place unfilled, and, when applied to an office, it means the state of being destitute of an incumbent, or a want of the proper officer to officiate in such office. But in neither case has it any reference whatever to any former time or to any former condition of the

place or office. If a place or office is empty now, there is a vacancy, regardless of whether it has once been filled or has always been empty. And so of an office.'' *Richardson* v. *Young*, 122 Tenn. 471 (125 S. W. 664, 686); 4 Words & Phrases, 2d Series, p. 1122.

In *Heney* v. *Jordan*, 179 Cal. 24 (175 Pac. 402, 405), the court says:

''It is clear that the term 'vacancy,' as used in this section, refers to any case where, from any cause, there is no nominee of the party for an office.''

In the case of *Coovert* v. *Olcott*, 81 Or. 415 (159 Pac. 974), which was written by Mr. Justice HARRIS, the principles adopted by the Direct Primary Law are thoroughly discussed. The statute then in force, Section 3389, L. O. L., empowered precinct committeemen to make nominations to fill vacancies among candidates caused by death or removal from the district, but not otherwise. It was held that the Republican committee did not have authority to name a candidate for the office made vacant by the resignation of a state senator, as the vacancy was not caused by death or removal from the district, which cases were the extent of the power of the precinct committeemen to make nominations for their party and suggested that the need for enlarging the powers of committeemen should be remedied by the legislature. Therefore in 1919, by Chapter 289, the legislature enacted the present provision, which was evidently intended to cover just such cases as the one in hand.

The further amendments of Section 3975, Or. L., indicates that it was the legislative intent to confer power upon a party central committee of any political party to nominate a candidate for nearly every vacancy, if not for any vacancy, upon the ticket of the

party occurring after the direct primary election has been held. This is not a case where there was no candidate voted for by the Democratic party at the primary election held last May.

■ Mr. J. W. Mott was a candidate for the Democratic nomination for Congress for the First Congressional District at the May primary election. The language of the statute should be taken in the ordinary acceptation of its meaning.

Webster defines a candidate to be:

"(1) One who offers himself or is put forward by others, as a suitable person or an aspirant or contestant for an office, privilege, or honor; (2) a person considered worthy or likely to obtain some dignity, or come to some place or end."

Other definitions, including those in law dictionaries, are of a similar purport:

"Candidate: One who seeks or aspires to some office or privilege, or who offers himself for the same; a person offering himself to the suffrage of the electors; one put forward for election, whether with or against his own will; one put forward by others for an office; one who is selected by others for an office or place; a person considered worthy or likely to attain some dignity, or to come to some place or end." 9 C. J., p. 1272.

*McCammant* v. *Olcott*, 80 Or. 246, 252 (156 Pac. 1034, L. R. A. 1916E, 706); *Regina ex rel. Coyne* v. *Chisholm*, 5 Ont. Prac. 328.

The fact that Mr. Mott did not petition to have his name placed upon the Democratic primary election ballot did not change the matter. The Democratic electors had a perfect right to write his name upon the ballot and vote for him. He received the Democratic nomination for representative in Congress

from the first Congressional District of Oregon: Sections 3987, 3988, Or. L.; *Portland* v. *Blue*, 87 Or. 271, 272. (170 Pac. 715). He was ineligible to accept a Democratic nomination for the reason that he was defeated for the nomination by the Republican party. A vacancy therefore existed on the Democratic ballot for the office within the meaning of Section 3975, Or. L., as amended in 1919, Chapter 289: 4 Words & Phrases, 2d Series, 1122; *Cline* v. *Greenwood*, 10 Or. 230, 237. Such vacancy could be filled by the Democratic Congressional Committee of the First Congressional District.

The last sentence of Section 3987, Or. L., reads thus:

"In all primary nominating elections in this state, under the provisions of this law, the person having the highest number of votes for nomination to any office shall be deemed to have been nominated by his political party for that office."

The Direct Primary Law adopts the principles of a representative form of government, at least to a certain extent. Under the circumstances set forth in the writ, the Democratic Congressional Central Committee is authorized by the statute to represent the Democratic electors of the district. They voted for a Democratic candidate for Congress for their district. It is true that their vote was effectual conditionally upon Mr. Mott's receiving the highest number of the votes of the Republican electors cast at that election. Nevertheless, although conditional, it is a nomination and Mr. Mott, being ineligible to accept such nomination and have his name printed upon the ballot at the general election to be held in November, there was a vacancy. The ineligibility men-

tioned in the statute does not necessarily include ineligibility of such candidate to be elected at the general election. In order that the vacancy may be filled by the Democratic Congressional Committee, he must be "ineligible" to have his name printed upon the ballot at the general election, or be a candidate of that party at such election.

■ It is forcefully urged on behalf of defendant that in such cases the ineligibility of the candidate mentioned in Section 3975 must arise subsequently to his nomination. With this contention we are unable to agree. The statute does not say the committee may act, in case any candidate "shall become" ineligible, but it provides for the committee to function "in case any candidate nominated * * for any reason *be* ineligible." (Italics ours.)

In the fair and able brief of the learned attorney general the case of *Heney* v. *Gordon*, 179 Cal. 24 (175 Pac. 402, 405), is cited as "a case exactly like the one now at bar" * * "both as to conditions of fact and of law." That case is similar in some of its aspects, as at that time, under the California statute, no candidate for the nomination for other than a judicial, school, county, township or municipal office, who failed to receive the highest number of votes for the nomination of the political party with which he was affiliated, would be entitled to be the candidate of any other political party.

The petitioner Heney, in that case, as his second contention, claimed to be entitled to be the nominee of the Democratic party for Governor by virtue of his selection by the Democratic State Central Committee. Mr. James Rolph, who was the candidate for the Republican nomination for Governor, failed to re-

ceive the highest number of votes for the nomination of the Republican party, but did receive the highest number of votes for the nomination of the Democratic party.

The opinion of the court states that (179 Cal. 31, 75 Pac. 405) :

"In 1917, section 25 of the act was so amended as to prohibit the filling of any vacancy on a party ticket, resulting from any cause whatever, except in the single case of a vacancy by reason of the death of the candidate occurring after the holding of the primary election. In such a case only is the party committee authorized to select a candidate of the party for the general election."

The California statute differs widely from ours at the present time. We learn from the brief that the legislature of California has passed an act to cover such facts as were involved in the Heney case. In short, the cases from other states seem to be under different circumstances, or different statutes from the case in hand.

The proximity of the date at which the Secretary of State is required to transmit information to the different county clerks, in regard to the ballots for the coming election, necessitates an early disposition of the case and precludes an extended discussion of the rulings in other states.

The demurrer to the writ is overruled.

Let the peremptory writ be issued.

WRIT ALLOWED.

BROWN, J., concurs in the result.