[File No. 6942]

STATE OF NORTH DAKOTA, EX REL. FRED GRAHAM, Petitioner, v. THOMAS HALL, Secretary of State in and for the State of North Dakota, and ADOLPH SCHLENKER, County Auditor, County of Burleigh, North Dakota, Respondents.

(15 NW(2d) 736)

Opinion filed September 15, 1944

*Mr. J. K. Murray,* for petitioner.
*Mr. P. O. Sathre,* Assistant Attorney General, for respondents.
*Mr. A. R. Bergeson* and *Mr. Hugo P. Remington* as amici curiae.

Per Curiam. The petition sets forth: That at the recent primary election, "one Alvin C. Strutz was a candidate for the Republican nomination for the office of governor . . . that at said primary election he was defeated"; that thereafter he filed with the secretary of state "his petition . . . for said office" to be voted on at the general election of 1944; and that the secretary of state "is about to certify the name of Alvin C. Strutz as a candidate for the office of governor at the coming general election . . . as such candidate . . . unless restrained by the order and judgment of this Court." It is stated generally that the secretary of state will certify "the names of other defeated candidates at the primary election . . . for their same office," the inference in the latter statement being that they were candidates for some of the offices mentioned in Sec. 82 of the Constitution. The petitioner asks this court to assume original jurisdiction under the provisions of Sec. 87 of the Constitution, and that the respondent be permanently restrained from certifying the name of Alvin C. Strutz as candidate for the office of governor, and from certifying the names of "these other defeated candidates." The truth of these statements is not denied.

The proceedings present some curious features. While the petitioner seeks to prevent the secretary of state from certifying the name of Mr. Strutz as a candidate for governor, in his brief he states specifically:

"It is to be noted that the Legislature used unequivocal language in the statute:

" 'Shall not be eligible as a candidate. . . .'

"If the Legislature set out purposely to have a collision with Section 73 of the constitution and other constitutional provisions fixing the

qualifications of constitutional officers, they could not have done a better job of it; consequently, this Court should state in plain language that said statute is unconstitutional in its application to state officers and, consequently, the injunction be denied."

Generally, when a petitioner appears and asks to have the relief demanded in his petition denied and respondent takes the same position, the proceeding will be dismissed without any discussion on the merits. However, in the matter of the exercise of original jurisdiction on the part of this court, other features enter into the matter. Mere private rights are not enough upon which to base an application for an original writ. The rights of the public must be affected directly. The real plaintiff is the state. As we say in State ex rel. Linde v. Taylor, 33 ND 76, 83, 156 NW 561, 563, LRA1918B 156, Ann Cas 1918A 583:

"The private relator, in his capacity as a citizen and taxpayer, merely informs the court of the infringement which has been or is about to be made upon the sovereignty of the state, or its franchises or prerogatives, or the liberties of its people, and the court by virtue of the power granted by the Constitution commands that the suit be brought by and for the state, even though the attorney general may refuse to bring this action or consent to its institution."

The matter was one of statewide concern, affecting the state and the electorate directly and we assumed original jurisdiction. Because of the statewide character of the controversy, several citizens became interested and thus Mr. A. R. Bergeson and Mr. Hugo P. Remington—both officers of this court as members of the bar—asked leave to appear in this court as amici curiae. Leave was granted and each filed his brief, Mr. Bergeson appearing personally to argue the matter. Those gentlemen took the position that the statute is constitutional and the argument was on the merits.

This proceeding involves the interpretation and effect of chap. 141 of the Sess. Laws of 1939, which provide as follows:

"An act prohibiting any person who was a candidate for nomination for office at a primary election and who was defeated for said office, from being a candidate for the same office at the ensuing general election.

"*Be It Enacted by the Legislative Assembly of the State of North Dakota:*

"Sec. 1. That any person who was a candidate for nomination for office at any primary election in any year and who was defeated for said office shall not be eligible as a candidate for the same office at the ensuing general election."

We must distinguish between a statute that prohibits candidacy and attempts to render one ineligible as a candidate, and one that merely prescribes the method of arranging an official ballot. It is argued the legislature has the right to make such regulation as is attempted in this chapter and decisions are cited to sustain this position. But such a case as State ex rel. Driscoll v. Swanson, 127 Neb 715, 256 NW 872, is not in point, though it involved a candidate defeated for nomination, as the statute there involved prescribed: "No candidate defeated at the primary election shall be permitted to file by petition in the general election next following." This quotation in the Nebraska syllabus is taken from the statute. The Nebraska statute did not seek to prohibit a defeated candidate from being a candidate at the next election, nor did it purport to render him "ineligible as a candidate." Clearly, it related to the filing of a petition in order to get his name upon the official ballot. The subsequent case of State ex rel. O'Sullivan v. Swanson, 127 Neb 806, 257 NW 255, 256, expressly states that one defeated at a primary "may be a candidate and if electors write his name on the ballot in sufficient numbers he will be elected." The statute was dealing with the manner of preparing the ballot. Our statute is dealing with the eligibility of a candidate and is an attempt to prohibit a man from being a candidate.

The controversy centers around the interpretation to be given the expression "eligible as a candidate." It will be noticed the title of the act seeks to *prohibit candidacy* at the ensuing election.

A similar question involving this statute was before the court in State ex rel. Sundfor v. Thorson, 72 ND 246, 6 NW(2d) 89, involving a candidate defeated for nomination for representative in the congress. We held specifically that the provisions of this chap. 141 in effect imposed "a qualification for the holding of the office of Representative in Congress in addition to those fixed by the Constitution of

the United States." The Constitution of the United States prescribes the qualifications of a candidate and we held the legislature could not add to nor subtract therefrom.

In the case at bar, we have a similar proposition but based upon the provisions of the state Constitution. Section 73 of the state Constitution provides for the election of a governor and states the qualifica tions as follows:

"No person shall be eligible to the office of governor or lieutenant governor unless he be a citizen of the United States, and a qualified elector of the state, who shall have attained the age of thirty years, and who shall have resided five years next preceding the election within the state or territory, nor shall he be eligible to any other office during the term for which he shall have been elected."

It is conceded that Mr. Strutz is a citizen of the United States, a qualified elector of this state, thirty years of age, and has resided in the state at least five years next preceding the election to be held in November, 1944. This section of the constitution prescribes the qualifications required of a governor. May the legislature add thereto the provision that he must not have been defeated for nomination as governor at the preceding primary election?

It is urged that the emphasis is to be placed on the word "candidate"; that ineligibility is confined to the candidacy and that alone; that it was not the intent of the legislature to add any qualification for governor so as to make a defeated candidate ineligible to hold the office, but it was its intent to prevent him from having his name printed upon the official ballot; that the history of the chapter shows this was the purpose of the legislature; and that here the word "candidate" should be construed so as to distinguish between one who is a candidate by his own volition and one who is selected or put forth by others.

We can not see any merit in this attempted distinction. The statute does not say "a voluntary candidate" nor does it define the term "candidate." All persons voted for are candidates whether they put themselves forward or are "drafted" by a group or by a party. See State v. Hirsch, 125 Ind 207, 24 NE 1062, 1063, 9 LRA 170. Whether one offers himself as a suitable person for the office or is put forward by others, he is a candidate (Starkweather v. Hoss, 126 Or 630, 270 P

768); and he is a candidate even if he is put forward contrary to his own wishes. McCamant v. Olcott, 80 Or 246, 156 P 1034, LRA1916E 706. There being no statutory definition—actual or constructive—we must accept the term in its usual signification, its general and recognized meaning.

Clearly, the purport of the statute is to render a person ineligible as a candidate and if the legislature may do so, the tendency of such provisions is to deter, hamper, and interfere with, not only persons becoming candidates, but with the electors in choosing officials, and to this extent interferes with the free exercise of the elective franchise of the citizens. This principle is set forth in State ex rel. McCue v. Blaisdell, 18 ND 55, 61, 118 NW 141, 144, 24 LRA(NS) 465, 138 Am St Rep 741, and applicable here. While this case cited was not dealing with the point involved in the case at bar, it did deal with a legislative attempt to add to constitutional provisions in the matter of oath of office. An observation of this court, made in this case cited, is applicable here, viz:

"The man who may be willing to consent to serve his state or his community in answer to the call of duty, when chosen by his fellow citizens to do so, is excluded, and the electorate has no opportunity to cast their votes for him. It is not an answer to this reasoning to say the electors may still vote for such a man by using pasters."

In Dapper v. Smith, 138 Mich 104, 101 NW 60, the court held that a state statute which required a candidate to take an oath that he is a candidate for the office before his name would appear on the ballot

"excludes the right of the electorate . . . to vote for the nomination of any man who is not sufficiently anxious to fill public station to make such a declaration. . . . It is not an answer to this reasoning to say that the electors may still vote for such a man by using 'pasters.' . . . The authority of the Legislature to enact laws for the purpose of securing purity in elections does not include the right to impose any conditions which will destroy or seriously impede the enjoyment of the elective franchise."

If a person is not eligible as a candidate for the office of governor, he is not eligible to hold the office. The term "eligible" means "capable of being chosen, the subject of selection or choice" (Carroll v.

Green, 148 Ind 362, 364, 47 NE 223, 224); " 'capable of being chosen' or 'qualified to hold office' according to the meaning necessary to carry out the purpose of the legislature" (State ex rel. McAllister v. Dunn, 277 Mo 38, 209 SW 110, 111). This term "must be construed to mean 'the qualification to hold as well as to be elected to' the particular office" (Helwig v. Payne, 197 Cal 524, 241 P 884, 885); "should be given its plain and ordinary signification, and, when so construed, there is no escaping the conclusion that it means capable of being elected or chosen." State ex rel. Broatch v. Moores, 52 Neb 770, 73 NW 299, 304. "The term 'ineligible' means as well disqualification to hold an office, as disqualification to be elected to an office." State ex rel. Schuet v. Murray, 28 Wis 96, 99, 9 Am Rep 489. In State ex rel. Haff v. Pask, 126 Ohio St 633, 186 NE 809, many definitions of similar import are set forth.

In support of the contention that the real and only purpose of the legislature was to deny the defeated candidate the privilege of having his name printed on the ballot, our attention is directed to such well-known rules of statutory construction as: That it is the duty of the courts to seek to ascertain the intent of the legislature in adopting a measure and that where a phrase or clause is susceptible of two or more constructions, one of which will sustain the constitutionality of the act, we should adopt that construction.

It is not necessary to cite any of our decisions sustaining such contentions. They may be said to be elementary. Time and again this court has so declared statutory construction. But we have also held invariably that where the words used are open to but one reasonable construction, there is no ambiguity and we must interpret the statute as it reads. See Lillegard v. Hutchinson, 67 ND 44, 48, 269 NW 43, 45. "The legislature must be understood to mean what it has plainly expressed and if a law is plain and within the legislative power, it declares itself and the courts have only the simple and obvious duty to enforce the law according to its terms." State v. Rother, 56 ND 875, 219 NW 574.

In the briefs filed by those who advocate the injunction, there are many cases cited showing the right of the legislature to prohibit the printing of the name of a defeated candidate upon the general election

ballot. We need not review them. There is nothing in this Chap. 141 which in any manner refers to the printing of the name upon the ballot. Under the constitutional provision found in § 61 of the Constitution, the subject of the bill "shall be expressed in its title." The title of Senate Bill Number 11, known as chap. 141, states the act is intended to prohibit a defeated candidate "from being a candidate for the same office" at the ensuing general election. The statute as written states that such person "shall not be *eligible* as a candidate." Neither of these statements has any reference whatever to printing the name upon the ballot. In determining whether the language of this statute is open to two constructions, the purpose set forth in the title to chapter 141 may well be persuasive as to the intent.

As we say in State ex rel. Sundfor v. Thorson, 72 ND 246, 6 NW (2d) 89, supra:

"There can be no misunderstanding of its words. They speak for themselves and require no interpretation. There is no room for ambiguity or uncertainty. The statute prohibits any person who was a candidate at the primary for nomination for any office and who was defeated, from being a candidate for the same office at the ensuing general election. This is the clear purport of its title. And the body of the act itself emphasizes this legislative intent, because it says such an one shall not be eligible as a candidate. Words could not be made plainer. Eligible means 'fitted or qualified to be chosen or elected; legally or morally suitable; as, an eligible candidate'."

As set forth in § 7278, "Words used in any statute are to be understood in their ordinary sense, except when a contrary intention plainly appears . . . " and while we apply this rule broadly in the attempt to sustain the constitutionality of a statute, yet we must be guided by rules of interpretation laid down by the legislature.

In this respect it is pertinent to note that the legislature met in regular session two months after the decision in State ex rel. Sundfor v. Thorson, supra, was announced, a decision which affected this statute materially, yet no legislation was enacted to express what is said now to have been the latent intent of a previous session, the intent declared by the amici curiae.

Other jurisdictions have had this same problem. In Broughton **v.**

Pursifull, 245 Ky 137, 53 SW(2d) 200, the court held as unconstitutional a statute which provided that a candidate for public office who had been defeated for the nomination for any office thereto shall not "be eligible or permitted to run for the same office for which he was a candidate under said section (of the Kentucky statute) at any general election, and stated further that it is 'incompetent for the Legislature to prescribe additional disqualifications not recognized by the Constitution, notwithstanding it might be competent to regulate, by statute, nominating primary conventions or elections, to be followed by certain results, not including, however, ineligibility of a defeated candidate in such primary to run, or be voted for the same office at the following general election.' "

The court commented on the fact the statute did not "enact, that a defeated candidate in the primary election held in the same year as the succeeding general election shall not be entitled to have his name 'printed' on the official ballot . . . ; but it says . . . shall not 'be eligible or permitted to run for the same office.' " etc. Followed in Bargo v. Tedders, 254 Ky 341, 71 SW(2d) 660.

Under the provisions of § 73 of the Constitution hereinbefore noted, anyone who possesses the qualifications set forth therein is eligible for the office and eligible as a candidate for the office. For us to say that this chap 141 means simply that such defeated candidate may not have his name printed upon the ballot is for us to substitute an unknown intent of the legislature for its clearly expressed intention as stated in the language of the statute. This would be legislation on our part.

In principle there is no difference between a legislative enactment which seeks to add qualifications to those specified in the Constitution and a legislative enactment which seeks to create a disqualification. The "legislature cannot enlarge nor diminish constitutional provisions prescribing eligibility and qualifications to hold office created by Constitution." State ex rel. Stain v. Christensen, 84 Utah 185, 35 P(2d) 775.

In the argument it is conceded that the provisions of this chapter 141 of the Sess. Laws of 1939 would apply in the same manner to all the state officers mentioned in § 82 of the Constitution, wherein the qualifications for such officers are set forth.

This statute under consideration is an attempt to add to §§ 73 and 82 of the Constitution a necessary qualification for the state officers named therein and to do so is beyond the power of the legislature.

The application for injunction is denied.

MORRIS, Ch. J., and BURR, NUESSLE, BURKE and CHRISTIANSON, JJ., concur.