FRANK P. RYAN v. MIKE HOLM.[1,2]

March 14, 1952.

No. 35,800.

---

[1]Reported in 52 N. W. (2d) 406.

[2]It is ordered that the order to show cause issued herein on the 26th day of February 1952 be and the same is hereby discharged. A formal opinion will follow.

Dated February 28, 1952.

BY THE COURT

CHARLES LORING

Chief Justice

*Frank P. Ryan,* pro se.

*J. A. A. Burnquist,* Attorney General, *George B. Sjoselius,* Deputy Attorney General, and *Charles E. Houston,* Assistant Attorney General, for respondent.

MAGNEY, JUSTICE.

Minnesota has a presidential primary election law. M. S. A. 202.45, subd. 1, thereof provides:

"Beginning February 1 of said election year and not later than the following February 15, there may be placed on the ballot, by petition filed with the secretary of state, the name of any person as a candidate for the nomination for the presidency of the United States. The said petition shall be signed by at least 100 voters from each congressional district in the state."

Pursuant to the above provisions, a petition was filed with Mike Holm, secretary of state of the state of Minnesota, respondent herein, in behalf of Estes Kefauver as a candidate of the Democratic party for the nomination of president of the United States, and the proposed delegates from the several congressional districts of the state and the state at large to the next national convention of the Democratic party.

Section 202.49, subd. 2, of said law provides in part as follows:

"* * * if on or before February 25th there is filed with the secretary of state *an affidavit of any person filed as a candidate* under the provisions of section 202.45 *stating that he is not a candidate for the nomination of president for the party for which he has been filed and that if nominated by such party he will not accept, then the name of such person* and the delegates pledged to his candidacy *shall not be included in the ballot* of that party and the filing fee shall be returned to the person who paid same to the secretary of state." (Italics supplied.)

Prior to February 25, 1952, United States Senator Estes Kefauver sent the following telegram to respondent:

"Secretary of State—
St Paul Minn—

"I, Estes Kefauver, Legal Residence Lookout Mountain Tennessee have been entered in the Minnesota Presidential Primary. My name was entered without my consent. I desire that my name shall not appear upon the ballot. I do not wish to be a candidate in the Minnesota Primary.

"Estes Kefauver USS."

The above telegram was followed by a letter and affidavit in the following words:

"State of·Ohio
County of Washington
"February 22, 1952

"To the Honorable Mike Holm
Secretary of State
Minneapolis, Minnesota

"Estes Kefauver, having been duly sworn says that although I am a candidate for President, I do not wish my name to appear on the Minnesota Ballot in deference to the favorite son candidacy of Senator Hubert Humphrey, and ask that my name not be placed on the said ballot.

"Estes Kefauver (Signed)

"Sworn to and subscribed before
"Charles D. Fogle
Notary Public of Ohio
"My Commission Expires November 15, 1954
"Notarial Seal"

This affidavit was received and filed in the office of the secretary of state on February 25, 1952. In compliance with the above verified request, respondent·omitted the name of Estes Kefauver from the copy of the ballot which he delivered to the printer.

192

On the verified petition of Frank P. Ryan setting out the above facts and claiming that an error is about to occur in the failure of respondent to place the name of Estes Kefauver and the names of delegates filed in his behalf on the official ballot for the presidential primary election to be held on March 18, 1952, and that error is about to be committed in the printing of such ballot, this court, under the provisions of § 202.08, directed respondent as secretary of state of the state of Minnesota forthwith to place the names of Estes Kefauver and the delegates filed in his behalf upon the presidential primary ballot for the state of Minnesota, or to show cause why he should not do so.

Respondent in his return to the order to show cause admits in substance the allegations of the petition, but denies that he is about to commit an illegal act in violation of law. He alleges that upon receipt of the telegram and affidavit above set out he requested an opinion from the attorney general of Minnesota advising respondent whether such letter and telegram were sufficient to authorize him to omit the name of Estes Kefauver from the March 18, 1952, presidential primary ballot. He received an opinion that the letter and telegram were sufficient to authorize him to omit such name from the ballot. Acting upon the advice he thus received, he omitted the name of Estes Kefauver from the copy of the ballot which he delivered to the printer immediately after the time for withdrawal had expired on February 25, 1952. Respondent asks that the order to show cause be discharged and that petitioner be denied the relief he prays for.

Petitioner contends that the filed withdrawal petition (the affidavit above set forth) does not conform to the statute (§ 202.45); in fact, that it is contrary thereto and does not legally justify respondent in refusing to place the name of Estes Kefauver on the forthcoming presidential primary election ballot. Respondent justifies his position on the ground that the withdrawal conditions imposed by the legislature are arbitrary and unreasonable.

Under § 202.49, subd. 2, which we have quoted, a candidate for whom a petition has been filed is not permitted to withdraw his

candidacy unless in the withdrawal affidavit which he must file with the secretary of state he states that "he is not a candidate for the nomination of president for the party for which he has been filed and that if nominated by such party he will not accept." In his filed withdrawal request, Estes Kefauver states under oath that, although he is a candidate for president, he does not wish his name to appear on the Minnesota ballot. The question submitted to us for determination is whether the withdrawal conditions of the statute are arbitrary and unreasonable and therefore invalid.

Since one of the withdrawal conditions imposed is clearly arbitrary and unreasonable, we shall confine our decision to that condition only, namely, the second condition of the withdrawal oath, that in order to withdraw his name as a candidate he must make oath that if nominated by the party for whose nomination he has been filed he will not accept. This is an arbitrary and unreasonable requirement. Not only is the state attempting to deprive a citizen of a private right and invading his liberty, but it is also attempting to control the action of every other state. If a candidate has been compelled to file such an oath as a condition of withdrawal, and if at the forthcoming national convention he receives the nomination for the presidency, it is apparent that such an oath on file in the office of the secretary of state of Minnesota would, to say the least, be most embarrassing if the nominee should wish to accept the nomination. If he did accept, it can readily be seen how the oath would handicap his candidacy. This second condition imposed for withdrawal of a candidacy is arbitrary and unreasonable, depriving a person of an inherent private right and invading the liberty guaranteed by the Fourteenth Amendment. The imposition of this condition exceeds the power of the state.

Authorities in point are nonexistent as far as our research discloses. Several cases have been cited as having a bearing on the question before us. One is State ex rel. Kinzer v. Hall, 50 N. D. 708, 197 N. W. 770. In that case it was held that where a petition is filed on behalf of a supposed candidate to have his name placed upon a presidential primary election ballot, which candidate later

requests the withholding of his name from the ballot, and where there is no proper showing that such person is an aspirant for the nomination of the party named in the petition, the officer whose duty it is to place the names on the ballot will not be compelled to include such name. The statute involved made no provision for the withdrawal of a candidate. Our statute permits such withdrawal, but on certain conditions. It is evident that State ex rel. Kinzer v. Hall, *supra,* although it permitted the filed candidate to withdraw, is of little value here as a precedent.

State ex rel. LaFollette v. Hinkle, 131 Wash. 86, 229 P. 317, has also been cited to us. In that case, Mr. LaFollette desired to have his name stricken from the ballot of a certain political party. The court ordered it stricken on the ground that an unauthorized use of his name was being made and that (131 Wash. 93, 229 P. 319) "he has a right to go into any court at any time to enjoin or prohibit any unauthorized use of it [his name]." Our problem here does not involve the right of a nominee to withdraw his name. The statute expressly gives him that right, but on conditions that to us seem arbitrary and unreasonable.

In McCamant v. Olcott, 80 Or. 246, 156 P. 1034, L. R. A. 1916E, 706, also cited, the court held that under the so-called presidential primary law of Oregon which provides that the name of any "candidate" for a party nomination for president shall be printed on the party nominating ballot "upon the petition of one thousand of his supporters," the name of one so petitioned for is required to be placed upon the ballot even contrary to his wishes; the word "candidate" not being construed to mean one who seeks or runs for office. The court said after reviewing the history of the law (80 Or. 249, 156 P. 1035):

"It will be seen that the vote thus taken did not, and could not, amount to a nomination, but merely to the expression of a preference by a majority of the voters, * * *."

It also said (80 Or. 253, 156 P. 1036):

"* * * The preferential vote cast in his favor does not nominate him for President, but is merely advisory to and morally obligatory upon the delegates chosen to represent the party in the national convention, * * *."

Apparently the so-called presidential primary of Oregon was nothing more than a popularity contest. No nomination was involved. There was no provision for withdrawal of the name of a proposed candidate. As we have already stated, the presidential primary law of Minnesota provides for the withdrawal of a candidate, but on terms so onerous as to be arbitrary and unreasonable.

What was in Oregon a popularity contest is converted by the Minnesota statute, although called a presidential primary election, into an election of delegates bound to a particular candidate.

In our opinion, the above-considered condition attached to the right of a candidate to withdraw his name from the presidential primary election ballot is arbitrary and unreasonable and therefore invalid.

It is ordered that the order to show cause issued herein on February 26, 1952, be and the same is hereby discharged.

Order to show cause discharged.