[File No. 6968]

THE STATE OF NORTH DAKOTA EX REL. NELS G. JOHNSON, Attorney General, Petitioner, v. BERTA E. BAKER, as State Auditor of the State of North Dakota, Respondent.

(21 NW2d 355)

Opinion filed May 26, 1945. On petition for modification, January 18, 1946

 

*Nels G. Johnson,* Attorney General, *P. O. Sathre,* Assistant Attorney General, for petitioner.
*Sullivans, Fleck & Higgins,* for respondent.
*Alvin C. Strutz* (amicus curiae).

NUESSLE, J. This proceeding was instituted to compel the respondent, the state auditor, Berta E. Baker, to draw warrants for money claimed to be due them by members of the legislative assembly pursuant to the provisions of House Bill 84, enacted into law by the Twenty-ninth Legislative Assembly of the State of North Dakota. See chapter 72, Session Laws 1945.

House Bill 84 provides that each member of the legislative assembly of the State of North Dakota shall be entitled to and shall receive the sum of three hundred dollars as reimbursement for his living expenses for each legislative session, to be paid in the same manner as the regular per diem of the members is paid. It also appropriated funds for the payment thereof. Vouchers for such expenses in the proper form were duly presented to the respondent. She refused to draw warrants for their payment. The state, on the relation of the attorney general, then brought this proceeding, and invoking the original jurisdiction of this court upon the ground that the controversy involved the sovereign rights of the state, its franchises and prerogatives, applied for a mandatory writ directing the respondent auditor to issue the warrants. See North Dakota Constitution, § 87; State ex rel. Goodwin v. Nelson County, 1 ND 88, 45 NW 33, 8 LRA 283, 26 Am St Rep 609; State ex rel. Steel v. Fabrick, 17 ND 532, 117 NW 860; State ex rel. Linde v. Taylor, 33 ND 76, 156 NW 561, LRA1918B 156, Ann Cas 1918A 583; State ex rel. Graham v. Hall, 73 ND 428, 15 NW2d 736. Whereupon this court assumed jurisdiction and issued its order

directed to the respondent to show cause why the writ should not issue as prayed.

In her answer and return to the order to show cause, the auditor admits her refusal to draw the warrants in question and justifies it on the ground that there is grave doubt as to the constitutionality of House Bill 84, because of the provisions of § 45 of the Constitution of North Dakota, which provides:

"Each member of the legislative assembly shall receive as compensation for his services for each session, five dollars per day, and ten cents for every mile of necessary travel in going to and returning from the place of the meeting of the legislative assembly on the most usual route." And in that behalf she alleges:

"That the validity of the said House Bill 84 is at least in grave doubt, similar statutes having been held unconstitutional and invalid in many other states as the respondent is informed and believes, although other states have declared them valid. That the appropriation therefor contained in H. B. 84 is $50,000 and the disbursement from the general fund of the state due as soon as the payrolls are presented to the respondent after the close of the legislative session involve, as the respondent is informed and believes, a total of more than $48,000.

"That it is a matter, therefore, of great importance to the respondent in the due and proper discharge of her duties to safeguard the funds of the state of North Dakota and to make no disbursement therefrom improperly or illegally, and to have the validity of the said statute determined before the disbursement thereof, to avoid liability under respondent's official bond, and particularly in view of the fact that if it should be declared by the courts of this state that the said act is invalid, after the disbursement of any of the said funds it would be the duty of the respondent, under the provisions of subsection 20b of § 54–1001, Rev Code 1943, to forthwith institute an action in the name of the State against the recipients of the said funds to compel their return to the state.

"Wherefore, the respondent prays that the above entitled proceeding be dismissed, that no peremptory writ be issued to the

respondent unless the court determines in the above entitled proceeding that the said House Bill 84 is valid and constitutional and that the respondent receive her costs and disbursements herein."

In short, the respondent admits her refusal to issue the warrants and justifies it by reason of her grave doubt as to the constitutionality of the statute in question and, in effect, asks an advisory opinion from this court as to its constitutionality, since, as she alleges, if she issues the warrants and the statute is unconstitutional she will have violated her duty under her oath of office and become liable on her official bond.

The relator challenges the sufficiency of this return. He contends the statute is constitutional and valid but that, in any event, whether or not this be so the auditor is merely a ministerial officer; that her duty prescribed by House Bill 84 is to draw warrants for the expenses of the members of the legislative assembly when proper vouchers are presented and warrants are demanded; that she will violate no duty and will suffer no injury by so doing; that accordingly she has no personal interest in and cannot question the constitutionality of the statute. On the other hand, the respondent contends that she is a constitutional officer; that as such she is charged with the duty of conserving the public funds; that while she is required pursuant to § 54–1001, Rev Code 1943, to draw warrants for the payment of money directed by law to be paid out of the state treasury, § 54–1002 provides that warrants shall not be drawn unless there are funds in the treasury applicable to the payment thereof to meet the same; that if House Bill 84 is unconstitutional there is no law either authorizing and directing the issuance of such warrants or appropriating funds applicable to the payment thereof, and, accordingly the drawing of the warrants will be violative of the duty of the respondent and will render her liable under her oath on her official bond; that consequently she is in duty bound to question the constitutionality of the statute and has the right to do so because she will be affected by it.

In view of the issues thus raised it may be well to state here certain principles this court has heretofore pronounced or ap-

proved and followed that must be looked to in considering them. In the first place, this court may not render advisory opinions. See § 96, North Dakota Const.; State ex rel. Olsness v. Mc-Carthy, 53 ND 609, 207 NW 436; Langer v. State, 69 ND 129, 284 NW 238. When the legislature speaks, the people speak. Murphy v. Townley, 67 ND 560, 274 NW 857. ". . . all governmental sovereign power is vested in the legislature, except such as is granted to the other departments of government, or expressly withheld from the legislature by constitutional restrictions. . . . Constitutional provisions are in the nature of grants of power to the executive and judiciary, but are limitations upon the power of the legislature." State ex rel. Standish v. Boucher, 3 ND 389, 56 NW 142, 21 LRA 539; State ex rel. Linde v. Taylor, 33 ND 76, 156 NW 561, LRA1918B 156, Ann Cas 1918A 583, supra. So all legislative enactments are presumed to be constitutional and in all cases of doubt the doubt must be resolved in favor of their validity. Martin v. Tyler, 4 ND 278, 60 NW 392, 25 LRA 838; State ex rel. Linde v. Taylor (ND) supra; State ex rel. Linde v. Packard, 35 ND 298, 160 NW 150, LRA1917B 710; State ex rel. Kaufman v. Davis, 59 ND 191, 229 NW 105. In Martin v. Tyler, 4 ND 278, 60 NW 392, 25 LRA 838, supra, this court said:

"We must remember that legislative power is primarily plenary, and that constitutions are not grants of, but restrictions upon, that power. Hence he who would challenge a legislative enactment must be able to specify the particular constitutional provision that deprived the legislature of the power to pass the enactment. We must remember that it is the duty of courts to reconcile statutes with the constitution when that can be done without doing violence to the language of either, and in all cases of doubt, the doubt must be resolved in favor of the constitutionality of the statute. This much deference the judicial department of government owes to the legislative."

The constitution itself speaks to the same effect, for § 89 thereof provides: "The supreme court shall consist of five judges, a majority of whom shall be necessary to form a quorum or pronounce a decision . . . ; provided, however,

that in no case shall any legislative enactment or law . . . be declared unconstitutional unless at least four of the judges shall so decide." And the constitutionality of a statute will be considered only when the question is properly before the court and necessary to a determination of the cause. Olson v. Ross, 39 ND 372, 167 NW 385; Goer v. Taylor, 51 ND 792, 200 NW 898; State ex rel. Kaufman v. Davis, 59 ND 191, 229 NW 105, supra; Federal Land Bank v. Johnson, 67 ND 534, 274 NW 668; State ex rel. Bank v. Weiler, 67 ND 592, 275 NW 67. It logically follows that the question of the constitutionality of a statute cannot be raised by one whose rights it does not affect and who has no legal interest in defeating it. Mohall Farmers' Elevator Co. v. Hall, 44 ND 430, 176 NW 131; Goer v. Taylor, 51 ND 792, 200 NW 898, supra; Department of State Highways v. Baker, 69 ND 702, 290 NW 257, 129 ALR 925. See also Encyclopedia of U. S. Supreme Ct. Reports, p. 74, and cases cited in notes.

Obviously, in the light of the foregoing principles, the first matter for our consideration is whether the respondent may challenge the validity of House Bill 84, for if she may not, we should go no further and the writ for which the relator prays must issue. It is equally obvious that the respondent's challenge must be denied unless she can show it is her official duty to question the validity of the enactment or that she will be otherwise personally affected if she does not do so and it is in fact invalid. Of course, under the facts here, she can be personally affected by failing to question its constitutionality only if her failure to do so constitutes a breach of duty whereby she will become liable on her official bond.

The question as to the right of ministerial officers, such as the state auditor, to raise the point that an enactment under which they are required to act is unconstitutional and therefore invalid, is one that frequently has been before the courts and there is a diversity of holding in the decisions touching that question. This is demonstrated by a reading of the following cases and the cases cited in their appended notes. See State ex rel. University of Utah v. Candland, 36 Utah 406, 104 P 285, 24 LRA(NS) 1260, 140 Am St Rep 834; State ex rel. Atlantic

Coast Line R. Co. v. Board of Equalizers, 84 Fla 592, 94 So 681, 30 ALR 362; State ex rel. Clinton Falls Nursery Co. v. Steele County, 181 Minn 427, 232 NW 737, 71 ALR 1190; Department of State Highways v. Baker, 69 ND 702, 290 NW 257, 129 ALR 925, supra. And many other cases might be cited to the same effect. In practically all of these cases, however, notwithstanding their diversity of holding on the point with which we are now concerned, the courts recognize the principle that the constitutionality of a statute cannot be questioned by one whose rights it does not affect and who has no interest in defeating it. And where it is held that a ministerial officer may raise the question it is because injury to himself might result or a violation of duty be imputed to him on account of his failure to do so. So in fact the diversity of holding is more apparent than real and exists rather because of differences in facts or of statutory or constitutional provisions or their interpretation and application rather than on account of departure from the generally recognized principle.

The question now before us is not a new one in this state. It arose first in the case of McDermont v. Dinnie, 6 ND 278, 69 NW 294, decided in 1896, where McDermont, claiming to be the duly elected and qualified municipal judge, pursuant to the provisions of the statute creating that office and providing the salary therefor, sought by mandamus to compel the issuance to him of a warrant for his salary by the mayor and the auditor of the city of Grand Forks. These officers justified their refusal to issue the warrant on the ground the statute in question was unconstitutional and therefore void. The petitioner contended that the respondents could not question the validity of the statute in a mandamus proceeding brought to compel the performance of their statutory duty. But the court, overruling this contention considered the statute and passed upon its validity. The court disposed of the point rather summarily, merely saying: "Nor is there, in our judgment, any force in the point that these defendants cannot raise the question of the unconstitutionality of this statute. They are municipal officers, charged by their oaths of office with the duty of protecting the funds of

the municipality. It would be a violation of their official duty should they proceed to pay out the funds of the city upon unwarranted and illegal claims. The writ cannot be invoked to compel an officer to do an illegal act."

The question next came before this court in 1916, in the case of State ex rel. Miller v. Leech, 33 ND 513, 157 NW 492, where, in a mandamus proceeding the respondent justified his refusal to perform the act sought to be coerced by the relator on the ground that the statute on which the relator relied was unconstitutional. The relator raised the point that the unconstitutionality of the act in question could not be asserted as a justification or defense in mandamus. The court, Judge Goss writing the opinion, said:

"Thus arises a perplexing question upon which the courts in the various jurisdictions are much divided, if not in hopeless conflict. For every decision upon one side of the question one can be found on the other. Two basic lines of reasoning are pursued. The one, that an unconstitutional statute is not law for any purpose, and therefore can be challenged by anyone in any direct proceeding. The other rule, supported by the greater weight of authority, is based largely upon governmental policy, and virtually prohibits a ministerial officer from challenging the constitutionality of a legislative act, except where he is personally interested, as, by reason of a disbursement to be made thereunder for which he is financially responsible. This upon the theory in the main that courts should accept as final the acts of the legislature and discourage attacks upon them, except where necessary to protect the private interests of the individual asserting invalidity and peculiarly and particularly affected thereby. Under the great weight of authority this public official could not, under ordinary circumstances, raise this question in mandamus. Dean v. Dimmick, 18 ND 397, 122 NW 245; 26 Cyc 156; and notes in 47 LRA 512–519; 24 LRA (NS) 1260; and 34 LRA(NS) 1060. Thus he could not have raised it of his own volition had no other assessment been attempted or made than an assessment of these parties by the State Tax Commission. He could not have refused to obey the

commands of the commission arbitrarily or capriciously, for the mere purpose of having a mooted point of law decided in this assessment matter, and in the absence of a court decision passing upon the constitutionality of this act. But under the circumstances in which this official found himself placed, one or the other alternatives must be followed. He must choose and under his official oath must follow the law to the best of his ability. And when acting as he has here, inasmuch as he is represented throughout these proceedings by the state's attorney of the county, elected to advise him with other county officials in such dilemmas, his decision under legal advice upon the law is required by these petitioners. State ex rel. Wiles v. Williams, 232 Mo 56, 34 LRA(NS) 1060, 133 SW 1 . . . ."

In Mohall Farmers' Elevator Co. v. Hall, 44 ND 430, 176 NW 131, supra, decided in 1920, the plaintiff sought by mandamus to compel the secretary of state to receive and file a corporate certificate. The defendant Hall, secretary of state, demurred to the petition on the ground it did not state facts sufficient to constitute a cause of action for the reason that the statute on which the petitioner relied was unconstitutional and void. The petitioner challenged the right of the defendant to question the constitutionality of the statute. This court, sustaining the challenge, overruled the demurrer, saying:

"Under the general principle that the constitutionality of a statute cannot be questioned by one whose rights it does not affect, and who has no interest in defeating it, the question has frequently arisen whether a public officer has such interest as entitles him to question the constitutionality of a statute and refuse to comply with its provisions. There is considerable conflict in the authority upon the general proposition whether, in an action to enforce the performance of a statutory duty by a ministerial officer, he may question the constitutionality of the statute imposing the duty. In some cases the right is denied. In other cases it is held that the constitutionality of a statute imposing a duty may be questioned under certain circumstances. 12 CJ 765.

"It has been said that the 'better doctrine, supported by an increasing weight of authority, is that a mere subordinate ministerial officer, to whom no injury can result and to whom no violation of duty can be imputed by reason of his complying with a statute, will not be allowed to question its constitutionality; but that the constitutionality of a statute may be questioned by an officer who will, if the statute is unconstitutional, violate his duty under his oath of office, or otherwise render himself liable, by acting under a void statute.' 12 CJ 765. See also 6 RCL p 92, § 92. This principle was recognized in State ex rel. Miller v. Leech, 33 ND 513, 157 NW 492, where this court held that under the great weight of authority a public official cannot, under ordinary circumstances, raise the question of constitutionality in a mandamus proceeding; but that under the peculiar facts in that case (where the county auditor was required to determine whether to recognize the assessment which had been made by the state tax commission, or the assessment which had been made by the local assessor and reviewed and equalized by the local and the county boards of equalization) the county auditor might assert, in defense of his official action in recognizing one assessment and refusing to recognize the other, that the law under which the latter assessment was attempted to be made was unconstitutional. But no such condition exists in this case as that which existed in State ex rel. Miller v. Leech (ND) supra. Here the defendant is not required to determine which of two conflicting official acts he must recognize; or which of two conflicting statutes is valid. Here the statute is plain, and defendant can incur no liability by performing the acts which the statute says he shall perform. If the statute is unconstitutional, it is so solely because it violates the constitutional rights of stockholders who do not consent to a change of the corporation to the co-operative plan.

"It is not contended that any right of the state or the public generally is in any manner violated or impaired. We are of the opinion that the secretary of state cannot be heard to assert in this proceeding that the rights of nonconsenting stockholders have been or may be violated. Such stockholders are the

proper parties to defend their rights, and the law affords them ample remedies for that purpose."

Again, in Goer v. Taylor, 51 ND 792, 200 NW 898, supra, decided in 1924, where plaintiffs as members of the State Bar Board sought a judgment declaring a statute appropriating moneys in the Bar Board fund to be unconstitutional and void, and restraining the defendants from expending the money thus appropriated as authorized and directed by the statute, this court sustaining a demurrer to the complaint held that a public officer whose individual rights are not affected by a statute and who has no personal interest in defeating it, cannot question its constitutionality. And in Department of State Highways v. Baker, 69 ND 702, 290 NW 257, 129 ALR 925, supra, decided in 1940, where the state auditor, acting on the advice of the attorney general, justified her refusal to perform a statutory duty on the ground that the statute was unconstitutional, this court held as stated in the syllabus:

"A subordinate ministerial officer to whom no injury can result and to whom no violation of duty can be imputed by reason of compliance with the statute may not question the constitutionality of the statute imposing such duty.

"Under the circumstances in this case wherein it appears that the state auditor is a constitutional officer against whom a proceeding is brought to compel her to disburse public funds under a statute which the attorney general, who is her legal adviser and is also a constitutional officer, has advised is unconstitutional, and the question of constitutionality is of great public importance affecting many people, the public revenue of the state and one of the major departments of the state government, it is held that the state auditor may question the constitutionality of the statute upon which the proceedings are based."

A careful consideration and review of the foregoing cases decided by this court, warrants the conclusion that in none of them is there even an expression inconsistent with the proposition stated in the first paragraph of the syllabus in Department of State Highways v. Baker (ND) supra, just above quoted. Certainly the McDermont v. Dinnie Case, 6 ND 278, 69 NW 294,

supra, on which respondent greatly relies, says nothing inconsistent with it. That case merely holds that an officer may challenge the constitutionality of a statute when to pay out municipal funds pursuant to its provisions would constitute a violation of his official duty. So, whether the respondent in the instant case may challenge the constitutionality of House Bill 84, supra, depends upon the answer to the question as to whether she will violate an official duty if she fails to do so because of any doubt she may have as to its constitutionality. Thus it becomes necessary to determine what the duty of the respondent was under the circumstances shown in the instant case.

The state auditor is a constitutional officer. His duties, however, are prescribed not by the constitution but by legislative enactment. See §§ 82 and 83, ND Const. In that behalf the legislature has spoken. See Chapter 54–10, comprising §§ 54–1001 to 54–1011, 1943 Rev Code. Section 54–1001 provides that among other powers and duties the state auditor shall superintend the fiscal affairs of the state; audit all claims against the state, the payment of which is authorized by law preliminary to the audit by the state auditing board; and draw warrants on the state treasury directed by law to be paid out of the treasury. Section 54–1002 provides that a warrant shall not be drawn by the auditor unless authorized by law and there are funds in the state treasury to meet the same. But § 54–1003 provides that all claims against the state, except as otherwise provided by law, must bear the approval of the auditing board. See also Chapter 54–14, comprising §§ 54–1401 to 54–1406, Rev Code 1943. So the real duty of saying whether claims not otherwise directed to be paid are proper and shall be paid, devolves upon the auditing board and not upon the auditor. As to claims otherwise directed to be paid, neither the auditing board nor the auditor has any discretion. And it must be borne in mind, insofar as the claims for legislative expenses are concerned, that they have been audited, approved, and directed to be paid by legislative action. And this has been the practice followed without question throughout the history of the state. As to such claims there is no question of fact to be determined; no room

for the exercise of discretion. The only question is one of law as to whether the statute is within the power of the legislature to enact. With respect to these claims the auditor's duty is purely ministerial. 43 Am Jur 75, Public Officers, § 258, and cases cited; 46 CJ p 1036, and cases cited.

The respondent, however, argues that pursuant to the provisions of Chapter 54–10, in superintending the fiscal affairs of the state and performing the other duties prescribed thereby, she is of necessity required under her official oath—prescribed not by the constitution but by the statute, § 44–0105, Rev Code 1943 —to determine at her peril whether any statute providing for the drawing of warrants for the payment of moneys of the state is valid and within the constitutional power of the legislature to enact, and if she draws a warrant for payment, though she has been authorized and directed to do so by legislative enactment and that enactment is subsequently held to be unconstitutional, she is derelict to her duty and becomes personally liable on her official bond. She insists that this is so because by her oath of office she has obligated herself to support the constitution of the state and faithfully discharge the duties of her office; that if the legislature exceeds its power and enacts an unconstitutional statute, such enactment is void and there is no law, and, therefore, when she draws a warrant pursuant to the requirement of such void enactment she draws one not authorized by law and thereby becomes liable. By parity of reasoning her position must be that she likewise acts at her peril and is liable on her bond for damages, if any result, and for costs necessarily entailed, if, as in the instant case, she doubts that a statute is valid and so refuses to act as required by it and the court subsequently holds she is wrong and the statute to be valid. Now the state auditor is not required to be a lawyer or to be learned in the law. Neither the constitution nor the statute presupposes that he shall be. And it seems to us it would be a harsh and unconscionable doctrine to apply that where a ministerial officer acts in good faith and in compliance with the mandate of a statute that is subsequently held to be invalid, or when he refuses to act because he doubts its validity and it is later held to be

valid, he becomes responsible under his oath on his official bond; to hold, in other words, that every such officer who is required to subscribe to the official oath in order to qualify performs his statutory duty in every case at his peril. Such a doctrine would be not only harsh and unconscionable, but also would be most detrimental to the efficient conduct of governmental affairs. For if this rule be applicable to one ministerial officer, it would seem to be equally applicable to any other such officer required to take the official oath. We can see no distinction in this respect between a subordinate and a superior officer. Surely the framers of the constitution did not contemplate any such purpose and consequence. This is clearly evidenced by the record of the Debates of ·the Constitutional Convention when in considering the question as to whether the judges of the supreme court should be required to give advisory opinions, reference was made to the duties of the attorney general. See Langer v. State, 69 ND 129, 284 NW 238, supra, where, after an examination of the Constitutional Debates, this court said:

"The question whether the judges of the supreme court should be required to give advisory opinions was considered with much care in the North Dakota Constitutional Convention. After the Convention had agreed to adopt § 96 of the Constitution, which provides: 'No duty shall be imposed by law upon the supreme court or any of the judges thereof, except such as are judicial.' (ND Const. § 96) it was proposed that the following provision be placed in the Constitution: 'The Judges of the Supreme Court shall give their opinion upon important questions of law and upon solemn occasions, when required by the Governor, the Senate or the House of Representatives; and all such opinions shall be published in connection with the reported decisions of said court.' Debates, Constitutional Convention (ND) p 228.

. . . . . . . . . . . .

"Judge Lauder, speaking in opposition to the proposed provision requiring judges of the supreme court to give advisory opinions, said in part): 'The gentleman from Burleigh has evidently forgotten that in all human probability we will have

in this state an officer designated as the attorney general, whose peculiar business it will be to advise the state officers and the legislature when called upon . . . . The attorney general is the officer to advise the civil officers, and when questions come before the supreme court, that court is then untrammeled . . . .'

"Senator Johnson said, in part: 'The premises of the gentleman from Burleigh are perfectly correct, namely, that the officers of the state and the legislature should have some guide in legal matters. So far, so good; we concede that, but his logic is wrong—his conclusion is fallacious. He draws the conclusion that the only way to get this legal advice is to put it in the Constitution that the appeal for legal information shall be made to the supreme court. We have a department specially provided to fill that—it has come down from the tradition of our fathers. . . . That is exactly the province of the attorney general in the state—that is the province of the attorney general at Washington.' Debates Constitutional Convention (ND) p 274." Langer v. State, 69 ND 129, 284 NW 238, 251.

And the legislature made plain that no such responsibility should be imposed upon any ministerial officer of the state and acted affirmatively to absolve him from it when, at the first session of the legislative assembly after the adoption of the constitution, it enacted § 4 of Chapter 21, of the Session Laws of 1889–1890 defining the powers and duties of the attorney general, now found practically word for word as § 54–1201, Rev Code 1943. And, in this connection, it must be remembered that many of the members of the first legislative assembly were men who had participated actively in the framing of the constitution and must have prescribed the duties of the attorney general in the light of their understanding of its provisions.

The attorney general also is a constitutional officer. His powers and duties like those of the auditor are not prescribed by the constitution but by legislative enactment. See §§ 82 and 83, ND Constitution. Chapter 54–12, comprising §§ 54–1201 to 54–1211, Rev Code 1943, prescribes those powers and duties. Section 54–1201, supra, provides that among other duties the attorney general shall "appear for and represent the state be-

fore the supreme court in all cases in which the state is interested as a party, appear and defend all actions and proceedings against any state officer in his official capacity . . . . If both parties to an action are state officers, the attorney general may determine which officer he will represent; Consult with and advise the governor and all other state officers, and, when requested, give written opinions on all *legal* or *constitutional* questions relating to the duties of such officers respectively; Give written opinions when requested by either branch of the legislative assembly upon *legal* questions; keep in his office a book in which he shall record all the official opinions given by him during his term of office, such book to be delivered by him to his successor in office." Thus the attorney general is made the legal adviser of both the legislative assembly and the state officers and it is particularly to be noted that he shall give written opinions to the legislative assembly upon legal questions and shall consult with and advise the governor and all other state officers and; when requested, give opinions not only on all *legal* questions but also on all *constitutional* questions relating to the duties of such officers. And the opinions so written must be recorded in a book which must be delivered to his successors in office. Reading this statute we can reach no other conclusion than that the legislature, thus imposing these duties upon the attorney general, made him the chief law officer of the state—the responsible legal adviser for the state auditor as well as for the other state officers, whose opinions shall guide these officers until superseded by judicial decision; that it took note of the fact that these officers are not required to be learned in the law and contemplated that when any constitutional or other legal question arises regarding the performance of an official act their duty is to consult with the attorney general and be guided by the opinion which that officer, if requested to do so, must give them. If they follow this course they will perform their duty, and even though the opinion thus given them be later held to be erroneous, they will be protected by it. If they do not follow this course, they will be derelict to their duty and act at their peril.

At this point we refer again to Department of State Highways v. Baker, 69 ND 702, 290 NW 257, 129 ALR 925, supra, and particularly to the second paragraph of the syllabus therein heretofore quoted. What we have said above is wholly consistent with the holding in the Department of State Highways Case—indeed, that case on its facts is the obverse of the instant case. In that case the respondent (also the respondent in the instant case) as she should have done, sought the advice of the attorney general who gave her his opinion that the statute there involved was unconstitutional. Pursuant to this advice she refused to act as required by its terms. Thereupon a proceeding in mandamus was instituted to compel performance. The respondent justified her refusal to act on the ground that the statute was unconstitutional. We held that under those circumstances she could challenge the statute. The writer of the opinion in the instant case refused to concur in all that was said in the opinion there, but, agreeing with the propositions of law stated in the syllabus, concurred in the result. On oral argument in the instant case it was stated without challenge or denial, that when House Bill 84 was pending in the legislative assembly that body requested an opinion of the attorney general as to its constitutionality and he in response to that request gave his opinion that it was within the power of the legislature to enact. It likewise was stated that the respondent was apprised of the legislative request and of the attorney general's opinion and its content and purport. Further, that the matter was discussed orally by respondent and the attorney general and she was then told that should she request a written opinion one would be given to her to the same effect and that even if the statute were later held unconstitutional she would be under no personal liability if guided by the opinion she issued warrants pursuant to the terms of the statute.

Presumptively the statute was constitutional. It was the law until the court declared to the contrary. The respondent's duty was to act in compliance with the law; not to pass upon its propriety. If she doubted its validity her duty was to consult and advise with the attorney general, the chief law officer of the

state, and to act in accordance with such opinion as he might give her. She did not do this but, contrary to the opinion which she knew he would give her, took it upon herself to say that the statute was unconstitutional. Under these circumstances she could not justify her refusal to comply with its terms in response to the order to show cause and so the petitioner's challenge to that return was good. Accordingly, pursuant to the rule heretofore stated that the constitutionality of a statute will be considered only when the question is properly before the court and necessary to a determination of the cause, we will not pass upon the constitutionality of House Bill 84.

We have given this case the most meticulous consideration. The point on which it turns is of very great public importance. Not only is every ministerial officer entitled to have defined with certainty the course he should follow when called upon to act pursuant to the terms of a statute of questionable constitutionality, but every citizen also is entitled to be informed as to what he may expect to be done in such case.

The writ will issue as prayed.

CHRISTIANSON, Ch. J., and BURKE, J., concur.

MORRIS, J. (dissenting). This is an original proceeding in the Supreme Court. The relator seeks a peremptory writ directing the State Auditor, Berta E. Baker, to issue warrants for the payment of certain sums claimed to be due to the members of the Twenty-Ninth Legislative Assembly under the provisions of House Bill No. 84. The State Auditor questions the constitutionality of the act and refuses to make the payments therein provided.

We determined that this controversy involves the rights, franchises and privileges of the State Government and have, therefore, assumed original jurisdiction. State ex rel. Langer v. Kositzky, 38 ND 616, 166 NW 534, LRA1918D 237; State ex rel. Wallace v. Kositzky, 44 ND 291, 175 NW 207; State ex rel. Sundfor v. Thorson, 72 ND 246, 6 NW2d 89, 143 ALR 599; State ex rel. Graham v. Hall, 73 ND 428, 15 NW2d 736; State

ex rel. Birdzell v. Jorgenson, 25 ND 539, 142 NW 450, 49 LRA (NS) 67.

We are met with a threshold question by the challenge of the attorney general to the right of the state auditor to raise the question of the unconstitutionality of the statute. He argues that the state auditor is a ministerial officer and that the duty of that officer to issue warrants against funds in the hands of the state treasurer does not authorize her to challenge the constitutionality of the statute under which she is called upon to act. The decisions of the courts of other states are not in accord on this question. Holdings are not always completely in accord in the same state. Generally it is held that a subordinate ministerial officer to whom no injury can result and to whom no violation of duty can be imputed by reason of compliance with the statute may not question its constitutionality. That rule has many exceptions and refinements of application. This court early crossed this stream of uncertainty in the case of McDermont v. Dinnie, 6 ND 278, 69 NW 294. That case involved the constitutionality of a statute establishing municipal courts in cities having populations of 5000 or over and abolished police magistrate courts in such cities. A judge of the municipal court in Grand Forks, who had been elected and qualified under the statute, presented to the mayor and auditor of the city vouchers for his salary. These officials refused to draw the salary warrants. A proceeding in mandamus was brought to compel the issuance of these warrants. The question of the right of the mayor and auditor to refuse to perform their ministerial duties in issuing the warrants upon the ground that the statute was unconstitutional was presented to the court. It is the identical question that we now have before us with respect to the State Auditor. In disposing of that question the court said:

"Nor is there, in our judgment, any force in the point that these defendants cannot raise the question of the unconstitutionality of this statute. They are municipal officers, charged by their oaths of office with the duty of protecting the funds of the municipality. It would be a violation of their official duty should they proceed to pay out the funds of the city upon un-

warranted and illegal claims. The writ cannot be invoked to compel an officer to do an illegal act. State ex rel. Diebold Safe & Lock Co. v. Getchell, 3 ND 243, 55 NW 585."

This court has approached the question somewhat demurely in two later cases. State ex rel. Miller v. Leech, 33 ND 513, 157 NW 492, involved the right of a county auditor to challenge the constitutionality of a statute under which certain tax assessments were made. In that opinion it was said:

"He could not have refused to obey the commands of the Commission arbitrarily or capriciously, for the mere purpose of having a mooted point of law decided in this assessment matter, and in the absence of a court decision passing upon the constitutionality of this act. But under the circumstances in which this official found himself placed, one or the other alternative must be followed. He must choose and under his official oath must follow the law to the best of his ability. And when acting as he has here, inasmuch as he is represented throughout these proceedings by the state's attorney of the county, elected to advise him with other county officials in such dilemmas, his decision under legal advice upon the law is required by these petitioners. State ex rel. Wiles v. Williams, 232 Mo 56, 133 SW 1, 34 LRA(NS) 1060. And under such circumstances, in a matter of this importance, he may invoke the unconstitutionality of the law under which an apparently regular proceeding by taxation, a prima facie valid tax, has resulted and is sought to be overthrown by a purported substituted assessment. 'In cases where the duty to perform an act depends solely on the question whether a statute or ordinance is constitutional and valid, the question may sometimes be determined on a petition for mandamus.' 26 Cyc 156. While courts should be slow to entertain suits invoking constitutionality, yet the circumstances here are exceptional and unusual. The public is interested in having a decision upon who has the power to assess this class of public utilities. Every county auditor and many other local taxing officials are confronted yearly with this question, as is every owner of this class of property throughout the state. The matter might be considered as involving questions publici juris."

In the case of Department of State Highways v. Baker, 69 ND 702, 290 NW 257, 129 ALR 925, in a paragraph of the syllabus agreed to by a majority of the court, two members dissenting, we said:

"2. Under the circumstances in this case wherein it appears that the state auditor is a constitutional officer against whom a proceeding is brought to compel her to disburse public funds under a statute which the attorney general, who is her legal adviser and is also a constitutional officer, has advised is unconstitutional, and the question of constitutionality is of great public importance affecting many people, the public revenue of the state and one of the major departments of the state government, it is held that the state auditor may question the constitutionality of the statute upon which the proceedings are based."

In the opinion in that case prepared by the writer and concurred in by Judge Burr a number of cases in other jurisdictions are discussed. Without repeating that discussion I will make further comment and cite other cases.

In Denman v. Broderick, 111 Cal 96, 43 P 516, the issue is raised as to the right of the auditor of a city and county to refuse to draw a warrant for the salary of a member of the board of election commissioners upon constitutional grounds. The court summarily disposed of the question with the statement that:

"We see no force in the point that the respondent has no interest in the question here involved. The act under which petitioner claims being unconstitutional and void, there is no law authorizing respondent to draw the warrant; and to do the act demanded of him would be to violate his official duty and oath, and subject himself to liabilities and penalties."

In State v. Snyder, 29 Wyo 163, 212 P 758, a proceeding in mandamus was brought against the state treasurer to require the apportionment of the school funds as desired by the relators. The treasurer challenged the constitutionality of the statute under which the relators sought to compel him to act. The court said:

"We think, in the first place, that the Treasurer of the state,

as custodian and conserver of the funds, has sufficient interest therein so as to raise the question whether or not the legislative acts in question are in conflict with the Constitution, in an action in mandamus where it is sought to compel him to pay out the said funds or a portion thereof."

In Com. v. Lewis, 282 Pa 306, 127 A 828, the attorney general filed a petition in mandamus seeking to compel the auditor general of the state to follow the advice of the attorney general and approve the payment of a number of requisitions on legislative appropriations. Pennsylvania had a statute not only making it the duty of the attorney general to furnish legal advice to administrative departments but also requiring the officers of the state to follow the advice given them by the department of justice and relieving them from any liability for so doing, upon their official bonds or otherwise. The court held that the statute was inapplicable to a question involving the constitutionality of a statute and that despite the advice of the attorney general the auditor general was entitled to raise the question of the constitutionality of the statutes under which it was sought to compel him to act. See also Com. ex rel. Atty. Gen. v. Mathues, 210 Pa 372, 59 A 961.

In Montpelier v. Gates, 106 Vt 116, 170 A 473, it was held that the state auditor of accounts and other state fiscal officers could question, in a mandamus proceeding, the constitutionality of an act appropriating for municipalities certain sums from intangible taxes. In that case it is said:

"It is argued that these defendants, for lack of interest in the result, cannot question the constitutionality of this act. There has been some conflict in the decisions on this question. But it has come to be quite generally held—upon sound legal principles, we think—that where, as here, the officer involved is not a ministerial officer of subordinate authority, but one who will, under his oath of office, violate his duty or otherwise render himself liable by the performance of the act enjoined upon him by the statute in question, if invalid, he is sufficiently interested to enable him to raise the question of the validity of the statute in a mandamus proceeding to compel him to comply therewith."

(Citations including McDermont v. Dinnie, 6 ND 278, 69 NW 294, supra, omitted.)

"This must be so if, as we are taught, an unconstitutional statute is a mere nullity that confers no rights, imposes no duties, and affords no protection. Then, too, these defendants are, in a very real sense, the custodians and conservators of the public funds, which they are forbidden to disburse except as the Legislature appropriates them. It is their sworn duty to execute their respective offices 'according to law.' Upon the plainest legal principles, they have the right to raise the constitutional questions here presented."

In this state the auditor is a constitutional officer whose powers and duties are prescribed by law. Section 83, ND Constitution. Section 54–1001, Rev Code 1943, prescribes the powers and duties of the state auditor, the first of which is stated as follows:

"The state auditor shall: 1. Superintend the fiscal affairs of the state;".

Par. 21 of the same section requires the auditor to "draw warrants on the state treasurer for the payment of money directed by law to be paid out of the state treasury." Section 44–0105, Rev Code 1943, provides that the state auditor shall take the oath prescribed in § 211 of the North Dakota Constitution, which requires that the officer will support the Constitution of the United States and the Constitution of the State of North Dakota and faithfully discharge the duties of the office which he holds according to the best of his ability. Thus we find the state auditor here to be in a situation similar to that of the mayor and city auditor in McDermont v. Dinnie (ND) supra.

In 16 CJS on page 175 we find the following comment after a review of seemingly conflicting authorities:

"Notwithstanding these various conflicting views it is generally held that the constitutionality of a statute authorizing disbursement of public funds may be questioned by the officer on whom the duty of disbursement is imposed, although there is also authority to the contrary."

Thus it appears that the weight of authority supports Mc-Dermont v. Dinnie. The cases holding to the opposite view are not sufficiently impressive in either number, weight or reasoning to warrant the discard of the precedent thus established.

The importance of the constitutional question raised by the state auditor, to both the state government and the public, as well as the closeness of the constitutional question involved, is indicated by the history of the act. At the 1943 session of the legislature a similar act was passed and vetoed by the then governor. That veto message appears on p 480, Sess Laws ND 1943, and reads as follows:

"I am filing herewith Senate Bill No. 78 for an Act providing for reimbursement for living expenses of the members of the State Legislature while in attendance at the session, and making an appropriation therefor, without my approval.

Of course, the members of the Legislative Assembly should receive greater compensation. Five dollars per day as fixed by the Constitution may have been reasonable in 1889, but today it is barely sufficient to pay the living expenses of the members while attending the session, and neither affords them any compensation for their services nor does it provide for the expenses which many members are forced to incur through hiring of others to do their work at home during their absence.

However, I am convinced that this Act is unconstitutional. Section 45 of the North Dakota Constitution reads as follows:

'Each member of the Legislative Assembly shall receive as a compensation for his services for each session, five dollars per day, and ten cents for every mile of necessary travel in going to and returning from the place of the meeting of the Legislative assembly, on the most usual route.'

The overwhelming weight of authority, under similar Constitutional provisions, is against its validity. The reasons for this view are set forth fully in Dixon v. Shaw, 50 ALR 1233, and the cases supporting that view are collected in the note to that decision and in the note following Peay v. Nolan, 60 ALR 408.

It is evident that the members of the Legislative Assembly entertained doubts as to the constitutionality of this measure,

as they adopted House Concurrent Resolution X which proposes a constitutional amendment to achieve the same purpose. I believe that this is the proper procedure, and I sincerely hope the amendment may be approved by the people.

In view of the fact that the constitution restrains the legislative assembly from increasing the salaries of other state officers during the terms for which they have been elected, I doubt the public policy of the legislative assembly in increasing the remuneration of its own members during their present terms, regardless of technical exactness as to whether the additional remuneration be termed compensation or personal expenses."

The veto was sustained and the legislative assembly then incorporated the act into a proposed constitutional amendment (ch 98, Sess Laws ND 1943). The proposed amendment was submitted to the people at the next primary election and defeated by a narrow margin.

This act, House Bill No. 84 of the Twenty-ninth Legislative Assembly, was vetoed by the present governor. The veto message reads as follows:

"I am herewith returning without my approval House Bill Number 84, An Act for Allowance of Expenses of Members of the Legislative Assembly, Making an Appropriation, Declaring an Emergency.

In the public mind there is some question about the constitutionality of this Bill. The Attorney General has indicated to me that it is the opinion of his office that this Bill is constitutional. In support of his opinion is the decision of the Supreme Court of South Dakota in upholding the constitutionality by a three to two vote on a similar statute passed in 1921 by the Legislative Assembly of that State, and also the decision of the Supreme Court of the State of Washington handed down in February, 1941, in which by a seven to two decision it upheld the constitutionality of a similar statute passed in that State. Where the line is as closely drawn as it is in this case we could pass the matter on to the Attorney General and the Supreme Court to make the final decision.

As Governor I must base my decision on this Bill upon the question of public policy and also upon the question of the wishes of the people.

Since 1889 we have held the popular interpretation that the salary and the expense as measured by the mileage allowance is determined by the Constitution for the members of the Legislature, and that there should be no change without Constitutional Amendment. This has been good public policy. In the difficult task that the Legislature has of holding down the requests for increased appropriations and the requests for increased salaries for others it is desirable that they be armed with the fortitude of knowing that they will not and can not increase their own salaries either by direct salary adjustment or indirectly through the allowance of expense money. I do know that that is the majority of opinion that has prevailed among the members of our Legislature for over fifty years, and I don't think that it should be changed now.

That the compensation for the members of the Legislature is too low there is no question. I urge you to pass a concurrent Resolution providing for a Constitutional Amendment and sincerely hope that the people will approve it."

Thus the law in question has been vetoed by two successive chief executives of the state. In the first veto message the view that the act is unconstitutional is clearly expressed. In the second message the doubtful constitutionality of the act is discussed at some length but the decision of the chief executive is finally put upon public policy. The legislature overrode the second veto.

The South Dakota case referred to in the veto message of the present governor is State ex rel. Payne v. Reeves, 44 SD 568, 184 NW 993. That case deals with an analogous situation. The constitution of South Dakota fixed the compensation of judges and certain state officers. The legislature passed an act providing a lump sum monthly allowance for moving and living expenses. The constitution, in addition to prescribing compensation, forbade judges to receive any compensation, perquisites or emoluments for or on account of his office in any form

whatsoever except salary. In the case of the other state officers, it forbade the receipt of fees or perquisites for the performance of any duties connected with their offices, and prohibited the legislature from increasing their salaries.

All judges being disqualified, the case was heard before a specially constituted court, consisting of members of the Bar, which reached the conclusion that such allowances were not compensation and that the provision for payment of the expenses of the respective judges and officers did not amount to an increase in salary; hence, the legislative provisions were not unconstitutional.

The opposite conclusion was reached by the Supreme Court of Iowa in Gallarno v. Long, 214 Iowa 805, 243 NW 719. The Iowa court cites a large number of cases in support of its view that the law is unconstitutional and severely criticizes the South Dakota decision.

In three recent decisions acts similar to ours are held to be constitutional and valid by divided courts. These cases are Peck v. State, 63 Idaho 375, 120 P2d 820, two judges dissenting; State ex rel. Todd v. Yelle, 7 Wash2d 443, 110 P2d 162, two judges dissenting; and Collins v. Riley, 24 Cal2d 912, 152 P2d 169, two judges dissenting. It is interesting to note that the California and Washington cases involved mandamus proceedings brought to compel the drawing of warrants. The question of constitutionality was raised in each case by the officer whose duty it was to draw the warrants. The right of the officer to raise the question of constitutionality does not seem to have been questioned in those cases and is not commented upon by the courts.

The views of two governors set forth in their veto messages, the conflicting decisions of the courts and the conflicting views of the judges as disclosed by the dissenting opinions, demonstrate that the question is one of great importance and that the constitutionality of the law now before us is surrounded by considerable uncertainty. The fact that the majority opinions in the more recent decisions tend to support the constitutionality of the act in question does not militate against the right of the

state auditor to challenge its constitutionality and have the validity of the law determined before issuing warrants thereunder against the public funds of the state.

In the opinion prepared by Judge Nuessle great stress is laid upon the effect of the opinion of the attorney general. The rule thus advanced confers upon the attorney general powers that neither the constitution nor the law prescribing his duties contemplates should be vested in him.

"1. The general rule is that an unconstitutional statute, though having the form and name of law, is in reality no law, but is wholly void, and in legal contemplation is as inoperative as if it had never been passed. It imposes no duties, confers no rights, bestows no power or authority on anyone, affords no protection and justifies no acts performed under it." State ex rel. Tharel v. Creek County, 188 Okla 184, 107 P2d 542.

"The courts alone are by the organic law empowered to authoritatively declare or to adjudge a statute to be in accord with or in conflict with the Constitution, so that the statute, if valid, stands, or, if contrary to organic law, will by the operation of the Constitution be rendered invalid from its enactment. 12 CJ 800. The opinions of officials and of attorneys and others that a statute is valid may be persuasive in a judicial determination of the matter, but such opinions, and acts done pursuant to such opinions, do not affect the power and duty of the court to adjudge a statute to be in conflict with organic provisions, when in the judgment of the court there is such conflict; nor do such opinions and acts affect the operation of the dominant force of the Constitution in rendering the statute inoperative ab initio, to the extent that it conflicts with the superior law as judicially determined.

If a legislative enactment conflicts with an existing provision of the Constitution, such enactment does not become a law." State ex rel. Nuveen v. Greer, 88 Fla 249, 102 So 739, 37 ALR 1298.

I cannot accede to a doctrine that would require a coordinate constitutional officer, such as the state auditor, to comply with an unconstitutional legislative enactment and deplete the public

treasury on the strength of a void statute because the attorney general has erroneously said that the statute is valid.

I quote from these cases not to intimate that the law in question is unconstitutional but to demonstrate the danger of adopting a rule that would empower the attorney general, even in a limited degree, to supplant the court in determining whether a statute conflicts with the constitution.

We should not direct a writ to the issue without first passing upon the state auditor's challenge to the constitutionality of the statute and thus determining whether the payment which we command to be made is lawful.

BURR, J. (dissenting). I concur in the dissent by Judge Morris. I can not give to the opinion of the Attorney General the power indicated by the majority opinion, nor say the state auditor, whose duty under the law is to "superintend the fiscal affairs of the state" and "audit all claims against the state the payment of which is authorized by law" is compelled to accept his view of what is authorized by law; particularly in the light of our decisions set forth in the dissenting opinion, and the position heretofore taken by this court.

NUESSEL, J. (opinion on petition for modification). Counsel for both parties to this proceeding have petitioned for a modification of the opinion of the court as heretofore handed down. In view of these petitions and of what is said in the dissenting opinions we deem it proper, though at the cost of no little repetition to file this additional opinion.

It is urged by counsel for the respondent that the following language in the opinion of the court, "Presumptively the statute was constitutional. It was the law until the court declared to the contrary. The respondent's duty was to act in compliance with the law; not to pass upon its propriety," is if not erroneous at least confusing and dangerous in that it is said "It was the law until the court declared to the contrary." Of course the rule is that every part of an opinion must be read and construed in the light of its setting and in connection with all the other portions thereof. So read we think that not only is

the statement not erroneous but that it is not subject to any misconstruction. The presumption is that all legislative enactments are constitutional, and, in cases of doubt, the doubt must be resolved in favor of their validity. This court has so held time and again, and we know of no case that holds to the contrary either. in our own reports or in those of any other court. And the constitutionality of a statute cannot be raised by one whose rights it does not affect and who has no legal interest in defeating it. This rule is also without exception and we have approved and followed it time and again. It follows that as to all not thus affected by it every statute is entitled to recognition as the law until the contrary is judicially determined.

The decisive points in the instant case are as stated in the opinion heretofore filed, "Was it the respondent's official duty to question the validity of the enactment? Would she be personally affected if she did not do so and it is in fact unconstitutional?" She is not challenging its validity here as a taxpayer so she can be personally affected by failing to question its constitutionality only if her failure to do so constitutes a breach of her official duty whereby she will become liable on her bond. Now what are her duties as state auditor with respect to the payment of claims against the state? The powers and duties of the auditor are fixed by the legislature pursuant to the constitution. The statute, § 54–1001, subsection 21, Rev Code 1943, provides that the state auditor shall "draw warrants on the state treasurer for the payment of money directed by law to be paid out of the state treasury." It is true, as is stated in one of the dissenting opinions that the statute, subsection 1, of § 54–1001, Rev Code 1943, also provides that the auditor shall "superintend the fiscal affairs of the state," and in subsection 13 provides that he shall "audit all claims against the state, the payment of which is authorized by law." But this latter statute does not stop there. It reads, "Audit all claims against the state, the payment of which is authorized by law *preliminary to the audit by the state auditing board.*" Originally the statute read as quoted in the dissent. See, subsection 10, § 98, Rev Code 1895, found later

as subsection 10, § 132, Comp Laws 1913. Section 98, supra, first appears in the Revised Code of 1895. In 1901 subsection 10 was impliedly repealed (see State ex rel. Langer v. Kositzky, 38 ND 616, 166 NW 534, LRA1918D 237) when the legislature saw fit to enact chapter 33 of the Session Laws of that year creating the state auditing board. The duties of this board were to audit all claims against the state that might come before it. The act further provided that the auditor should act as secretary of the board and should receive and file claims presented to him for payment and bring them before the board for action and that no warrants should be drawn by him except such as had been passed upon and approved by the board. This statute, amended and enlarged by chapter 227, Session Laws 1915, was continued in effect and appears as § 375, of the 1925 Supplement. Among other things, § 375 provided: "The state auditor shall act as secretary of the state auditing board, and shall receive and file for the consideration of the state auditing board, all accounts, claims or demands against the state, except . . . such others as are now specifically excepted by law . . . It shall be the duty of the state auditing board to audit all claims, accounts, bills or demands against the state, except . . . such others as are now specifically excepted by law." The provisions of the statute just above referred to are now found in the Revised Code of 1943, in §§ 54–1003, 54–1401, and 54–1403, and consistently, subsection 10, § 132, Comp Laws 1913, as amended in the 1943 Rev Code appears therein as subsection 13, § 54–1001, supra. Thus the legislature saw fit to and did diminish the powers and duties of the auditor and made him secretary and a member of the auditing board now consisting of the governor, the auditor, the secretary of state, the treasurer and the state examiner. So his audit is as designated; merely a preliminary audit, purely clerical in character. "There is no officer or officers whose duty it is to audit claims and accounts against the state, other than the state auditing board; and it is apparent that it is not the duty of this board to audit any claim or demand against the state that has been specifically excepted

by law." See State ex rel. Langer v. Kositzky (ND) supra. In any event, as we have heretofore said, the statute, chapter 72, Session Laws 1945, here involved, provides that the legislative expenses shall be paid in the same manner as the regular per diem of the members is paid. See in this connection, § 54-1404, Rev Code 1943. It fixes the amounts to be thus paid and provides an appropriation therefor. Thus these claims for legislative expenses have been audited, approved and directed to be paid by legislative action and are not subject to the requirement that they be otherwise audited and approved. And this is the practice that has been followed since the first days of statehood.

The respondent, however, insists that notwithstanding the statutory provisions above referred to which denude the auditor of all discretionary powers respecting the payment of legislative expenses and expressly provide that he "shall draw warrants on the state treasurer for the payment of money directed by law to be paid out of the state treasury," she is nevertheless obligated by her oath of office—to support the constitution of the state and faithfully discharge the duties of her office to the best of her ability—to challenge the constitutionality of any statute providing for the payment of such expenses if she has any doubt as to its validity. It seems to us, however, that there is no ground for this contention. True, she is obligated to support the constitution but the constitution as it is judicially determined to be and not as she determines it to be. And the same oath obligates her to discharge the duties of her office as prescribed by the legislature pursuant to the constitution. The constitution leaves it to the legislature to say what the powers and duties of the state auditor and the attorney general shall be. It does not require these officers to take an oath to support the constitution. That requirement is imposed by the legislature and the legislature could have dispensed with it. Had it done so would the situation be at all different? Not at all. The statutes prescribing the duties of the auditor and of the attorney general must be read and construed together. So read the only reasonable construction is that the oath of office

requires the auditor to perform the duties prescribed by the legislature unless and until the attorney general advises or the courts hold the statute prescribing those duties to be unconstitutional. To hold that the state auditor or any other state officer must, at his peril, pass upon the question of the constitutional validity of every statute under which he acts, would be, as we have heretofore said, both most harsh and unconscionable and could not be otherwise than detrimental to the efficient conduct of the public business. As is said in State ex rel. Atlantic Coast Line R. Co. v. Board of Equalizers, 84 Fla 592, 94 So 681, 30 ALR 362: "The contention that the oath of a public official requiring him to obey the Constitution places upon him the duty or obligation to determine whether an act is constitutional before he will obey it is, I think, without merit. The fallacy in it is that every act of the legislature is presumably constitutional until judicially declared otherwise, and the oath of office 'to obey the Constitution' means to obey the Constitution not as the officer decides, but as judicially determined. The doctrine that the oath of office of a public official requires him to decide for himself whether or not an act is constitutional before obeying it, will lead to strange results and set at naught other binding provisions of the constitution." See, also, State ex rel. Clinton Falls Nursery Co. v. Steele County, 181 Minn 427, 232 NW 737, 71 ALR 1190.

It is clear the framers of our constitution intended that state officers should not be burdened with any such responsibility when they refused to require this court to render advisory opinions and provided for the office of attorney general. It is equally clear that the first legislature convened after the adoption of the constitution was moved by the same considerations when it enacted chapter 21, Session Laws of 1889–1890 providing the powers and duties of the attorney general and requiring among other things that he should "consult with and advise the governor and all other state officers and when requested give written opinions upon all legal or constitutional questions relating to the duties of such officers respectively" (§ 4, subsection 5) and "keep in his office a book in which he shall record all the

official opinions given by him during his term of office which shall be by him delivered to his successor in office" (§ 4, subsection 10). These provisions have remained unchanged and are now found in § 54–1201, Rev Code 1943. While it would seem that a constitutional question is a legal question the legislature saw fit to specify not "legal questions" but "legal or constitutional questions." It thus, inferentially at least, differentiated between the two with the evident purpose of making more plain the legislative intent that the attorney general's advice on constitutional questions should be taken and followed by all state officers just as on all other legal questions.

It is argued that to hold the attorney general's advice should control in the above respects, is to empower the attorney general to supplant the court in determining whether a statute conflicts with the constitution. We can see no merit to this contention. The attorney general, an officer required to be learned in the law (see Enge v. Cass, 28 ND 219, 148 NW 607) no more supplants the court in passing upon the validity of a legislative enactment than the auditor or treasurer or any other officer not required to be a lawyer would in doing so. On the contrary, if such officers may disregard the provision made by the legislature for obtaining advice from the attorney general on constitutional questions and presume to pass upon such questions themselves, they will supplant that officer. But the attorney general does not, and is not intended to, supplant the courts in such cases. He gives his opinions for the guidance of the state officers until such questions as concern them are passed upon by the courts. His opinions, if followed in good faith, relieve them from responsibility and protect them. If they fail or refuse to follow his opinions they do so at their peril.

The respondent cites and relies upon cases from other jurisdictions as sustaining her position in the instant case. Analyzed, these cases invariably turn upon the point as to what is the duty of the officer who seeks to justify his refusal to comply with a statutory mandate on the ground that the statute is unconstitutional. Thus the case of State ex rel. University of Utah v. Candland, 36 Utah 406, 104 P.285, 24 LRA(NS) 1260,

140 Am St Rep 834, holds in effect that a ministerial officer who will under his oath of office violate his duty or who may otherwise render himself liable if he performs some act in compliance with the requirement of an unconstitutional statute, is entitled to raise the question as a defense in a mandamus proceeding to compel him to perform such act. Of course we do not disagree with the principle of this holding. As to this principle, there was unanimity of opinion in Department of State Highways v. Baker, 69 ND 702, 290 NW 257, 129 ALR 925. Our holding in the instant case is predicated on our statutory and constitutional provisions and the duties of the state auditor as we spell them out to be under those provisions. The case of Com. ex rel. Woodruff v. Lewis, 282 Pa 306, 127 A 828, is another case relied upon by the respondent. In the Lewis Case the court said respecting a statute providing that the auditor general must submit doubtful *legal* questions affecting the performance of his official duties to the attorney general and follow the advice given when received. "Evidently the reasons for requiring such legal difficulties or disputes to be referred was to obtain the advice of the department of justice in regard to them. It cannot be supposed the legislature intended that the asking should be perfunctory and the advice when received could be cast aside as valueless. The whole tenor of the statute is to the contrary and to adopt such a conclusion would be to charge the legislature with directing a useless and foolish thing. A result which no coordinate branch of the government would ever assert unless no other course was open to it." This is exactly in line with the construction we have put upon our statute prescribing the duties of the attorney general to which we have heretofore particularly referred. Furthermore, we are convinced that a careful reading of the opinion in the Lewis Case as a whole warrants the conclusion that its reasoning logically pursued in the case at bar would compel the same result as that at which we have arrived. Of course, every part of an opinion must be read and construed in the light of its context and the law and facts before the court. Now what are the constitutional and statutory provisions considered in the Lewis Case? The con-

stitution of Pennsylvania requires the auditor general to take an oath "to support, obey and defend" the constitution of that commonwealth. The statute provides that state officers must submit doubtful legal questions affecting the performance of their official duties to the attorney general and follow the advice given when it shall have been received. So the rationale of the opinion is that the official oath being required by the constitution the obligation to obey the constitution cannot be overridden by legislative action. Therefore, when the legislature provided that legal questions should be submitted to the attorney general and made no mention of constitutional questions, it could not have intended that constitutional questions should be so submitted for that would conflict with the constitutional duty imposed by the oath. Accordingly, the court drew a concededly fine distinction between a legal question and a constitutional question and held that though a state officer must submit legal questions to the attorney general and follow his advice when given, this requirement did not apply to constitutional questions. And so the auditor might defend in a mandamus proceeding brought to compel his performance of a statutory duty on the ground that the statute imposing that duty was unconstitutional.

The conclusion at which the court arrived in the Lewis Case logically follows its holding that though under the Pennsylvania constitution and statutes the auditor general was required to seek and follow the advice of the attorney general respecting legal questions affecting the duties of his office, yet under his official oath it was his duty to pass upon constitutional questions affecting the duties of his office himself. We held in our original opinion that the state auditor is required by our statute to submit constitutional as well as legal questions affecting his official duties to the attorney general and to follow such opinions as that officer may give him unless and until the courts hold to the contrary, and that consequently unless so advised by the attorney general he cannot in a proceeding in mandamus to require him to perform a statutory duty raise the unconstitutionality of that statute as a defense. After the

most meticulous re-consideration of the questions involved in this proceeding we are but confirmed in what we said in the opinion heretofore handed down.

CHRISTIANSON, Ch. J., and BURKE, J., concur.

MORRIS, J. The afterpiece to the prevailing opinion, through the medium of quotation, adopts language from Com. ex rel. Woodruff v. Lewis, 282 Pa 306, 127 A 828, which, if confined to the narrow limits set by the quotation marks, may result in a misconception of the holding of the Pennsylvania Court. Every part of an opinion must be read and construed in the light of its context and the law and facts before the Court. In that case it was held that the statute under consideration, which required state departments to submit to the Attorney General "any legal difficulty or dispute" and made it the duty of an inquiring department to follow the opinion of the Attorney General, did not apply to a question involving the constitutionality of a statute. An exception was thus made of the very question which we have before us. In so deciding the court said:

"It is further contended that the making of this exception clearly points to the error of the judgment, since a question regarding the constitutionality of a statute is at least as much a 'legal difficulty or dispute' as one regarding its meaning. In a government without a written Constitution, it would be difficult to answer the logic of this argument. It was considered at great length by the present Chief Justice, when sitting in the lower court, in Com. ex rel. Atty. Gen. v. Mathues, 210 Pa 372, 380 to 390, 59 A 961, and his reasoning, which led him to the same conclusion as that reached by the court below in the instant case, has never been answered. Nor can it be; for, by article 7 of the Constitution, appellant was required to, and of course did, 'solemnly swear (or affirm) that I will support, obey and defend the Constitution of the United States, and the Constitution of this Commonwealth.' This, therefore, is his constitutional duty, overthrowing any antagonistic obligation attempted to be imposed by legislation. If we could find an interpreta-

tion for the Administrative Code which would require an executive officer to do an unconstitutional thing, which we cannot see in it, however, we would be compelled to so interpret it, if possible, as to exclude that result (Carr v. Ætna Acci. & Liability Co. 263 Pa 87, 106 A 107); happily its reasonable construction does this."

The majority of this Court also quotes from State ex rel. Atlantic Coast Line R. Co. v. Board of Equalizers, 84 Fla 592, 94 So 681, 30 ALR 362. The Supreme Court of Florida subsequently distinguished that case from those involving the disbursement of public funds.

In State ex rel. Juvenal v. Neville, 123 Fla 745, 167 So 650, it was held that the constitutionality of an act fixing compensation for county commissioners was subject to attack by an officer who, by the terms of the act, was required to pay out public funds. The Court said:

"It is contended that the respondents could not question the validity of the 1927 act and that as officers they are bound to comply with it until it has been held invalid by a court of competent jurisdiction. This contention is based upon the opinion and judgment in the cases of State ex rel. Atlantic Coast Line R. Co. v. Board of Equalizers, 84 Fla 592, 94 So 681, 30 ALR 362, and State ex rel. Howarth v. Jordan, 105 Fla 322, 140 So 908. Neither of these cases is applicable where the officer contesting the validity of the act is by the terms of the act required to pay out public funds. In such cases the officer has an interest in the subject-matter which will warrant his appealing to the courts to determine whether or not the act questioned is a constitutional provision requiring him to pay out public money."

In State ex rel. Harrell v. Cone, 130 Fla 158, 177 So 854, it was held that the State Comptroller could challenge the constitutionality of an act providing for the disbursement of public funds if he entertained a grave doubt as to the validity of the act. The Court said that the case fell within the rule thus stated:

". . . if an act requires a ministerial officer to perform

duties particularly affecting him personally, as where he will violate his oath of office if he performs them, *or where he is charged with the control and disbursement of public funds,* his official capacity gives him such an interest in the matter that he may challenge the validity of the act in mandamus." (Italics supplied.)

In view of the discussion of the diminution of the authority of the State Auditor through the creation of a State Auditing Board, I call attention to the fact that payments made to the members of the legislature under House Bill 84 (Ch. 72, Sess Laws ND 1945) are not passed upon by the State Auditing Board. The act provides that the sums paid members of the legislature thereunder "shall be paid in the same manner as the regular per diem of the members of the legislative assembly is paid." That per diem is paid upon warrants issued by the State Auditor without submission to the State Auditing Board. It is thus apparent that the State Auditor does not share with the State Auditing Board any responsibility for issuing warrants for the money involved in this suit.

I adhere to my former dissent.

BURR, J., concurs.